### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

**GO GLOBAL TRADING & CONSULTING, LTD.**, a Hong Kong company,

        Plaintiff

vs.

**V10 GLOBAL LOGISTICS & TRADING CORP.**, a Florida corporation, **SIDNEY DE ARAUJO JUNIOR**, an individual, **RAFAEL FEDELE**, an individual, **JOHN DOE 1, JOHN DOE 2, and JOHN DOE 3**,

        Defendants.

_____/

### COMPLAINT

Plaintiff, GO Global Trading & Consulting, Ltd. ("GO Global"), by and through its undersigned counsel, hereby sues Defendants V10 Global Logistics & Trading Corp., Sidney de Araujo Junior, Rafael Fedele, and John Does 1, 2 and 3[1] (Sidney de Araujo Junior and Rafael Fedele are, collectively, the "Individual Defendants") (V10 and the Individual Defendants are, collectively, the "V10 Defendants") (the V10 Defendants and John Does, 1, 2, and 3 are, collectively, the "Defendants"), and alleges as follows:

### INTRODUCTION

1.    Sidney de Araujo Junior ("Junior") and Rafael Fedele ("Fedele") pose as legitimate businessmen, but they are not. They operate V10 Global Logistics & Trading Corp. (f/k/a V10

---

[1] The identities of the John Doe defendants are currently unknown. GO Global will amend its Complaint upon ascertaining the identities.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 2

Sports Car Corp.) ("V10") with illegally-derived income and use V10 to commit illegal acts. Junior, Fedele, and V10 (referred to collectively as the "V10 Defendants") are ostensibly automobile distributors, frozen meat distributors, or construction contractors, as the opportunities dictate, but their business operations are a ruse to steal. In this instance, the V10 Defendants took tens of millions of dollars from GO Global and its customers, through a fraudulent scheme designed to collect millions more. As discussed below, the V10 Defendants established a Ponzi-type scheme by which V10 collected payments from GO Global for the purchase of large quantities of frozen meats to be shipped in cargo containers from Brazil to GO Global's customers in China. The scheme, as will be described in greater detail below, consisted of several deceptive components: First, V10 intentionally would sell GO Global quantities of products that were three or four times, or more, than the quantities that V10 would actually purchase from its suppliers, with no intention to ever provide GO Global the products that V10 had sold them and with no intention to return the payments GO Global had made. Second, V10 concocted a story that the company's principal supplier was offering a discount for full payments (as opposed to deposits) prior to shipping, luring GO Global into making full payments for products that V10 never ordered and never shipped. Third, V10 accepted orders and deposits from GO Global that V10 never processed, retaining the deposits and delivering nothing in return. Fourth, V10 placed GO Global in the impossible situation of requiring deposits for new orders without completing the shipments of products for which GO Global had already paid, forcing GO Global into a perpetual obligation to continue paying money to V10 or to lose existing orders. Fifth, the V10 Defendants falsified documents, including but not limited to altered or phony container documents, shipping documents, delivery documents, and emails, to create the appearance that product was shipped when it was not.  Establishing itself as a reliable vendor, V10, through the individual Defendants,

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 3

began the relationship with GO Global with successful transactions and fulfillments, until the V10

Defendants had lured GO Global into a level of confidence. Thereafter, GO Global would proceed

to pay V10 tens of millions of dollars for products GO Global would never receive or be able to

deliver to its customers.  As a result, GO Global found itself unable to complete orders for its

customers and at V10's mercy as V10 literally held GO Global's products and finances for ransom.

At the same time, the V10 Defendants would divert the proceeds of the frauds and deceptions to

Junior, to Fedele, to their other endeavors, and, on information and belief, to the John Doe

defendants. In short, the V10 Defendants engaged in an ongoing series of fraudulent acts causing

devastating harm to GO Global. GO Global's injuries consist not only of the financial damages

resulting from lost orders and stolen payments, but the V10 Defendants have also destroyed GO

Global's business reputation and credibility with GO Global's customers, suppliers, vendors, and

government authorities. This is an action against the V10 Defendants for recovery of the amounts

that they wrongfully took from GO Global, for consequential and punitive damages, and for

additional relief as this Court deems appropriate.

## PARTIES, JURISDICTION AND VENUE

2.      GO Global is a Hong Kong company engaged in the business of frozen meat sales

and distribution.

3.      V10 is a Florida corporation, with its principal place of business in Fort Lauderdale,

Florida. V10 holds itself out as an exporter of chicken, pork, and other food products.

4.      Upon information and belief, Junior is a citizen of the State of Florida, and has

resided within this judicial district at all times material to this action.

5.      Upon information and belief, Fedele is a citizen of the State of Florida, and has

resided within this judicial district at all times material to this action.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 4

6.      John Does 1, 2, and 3 are representatives of defendants, either individual or corporate, as yet unspecified, who are the participants in the fraudulent conveyances of V10, described hereinbelow.

7.      This Court has diversity subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 133(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of a state and citizens or subjects of a foreign state who not lawfully admitted for permanent residence in the United States.

8.      This Court also has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1331, as (a) this case includes claims arising under a treaty of the United States, in particular, the United Nations Convention on Contracts for the International Sale of Goods ("CISG") and (b) this case includes claims arising under federal statutes, in particular, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1961, *et seq.*

9.      Further, this Court has supplemental jurisdiction over all state claims asserted herein pursuant to 28 U.S.C. Section 1367.

10.      This Court has general personal jurisdiction over V10 because it is a Florida corporation that maintains its headquarters and principal place of business in Florida *and* in this judicial district.

11.      This Court has specific personal jurisdiction over V10 because it has ongoing and continuing contacts within this jurisdiction, conducts its day-to-day business in this jurisdiction, the misconduct described herein was initiated and carried out in this jurisdiction, V10 has purposefully availed itself of the benefits and protections of the laws in this jurisdiction, and V10 reasonably anticipates or should anticipate that it would be haled into court in this jurisdiction.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 5

12.     This Court has general personal jurisdiction over Junior and Fedele as they reside in this judicial district and conduct substantial business in this judicial district.

13.     This Court has specific personal jurisdiction over Junior and Fedele because (i) they have ongoing and continuing contacts within this jurisdiction, (ii) they conduct their day-to-day business in this jurisdiction, (iii) the misconduct described herein was initiated and carried out by Junior and Fedele in this jurisdiction, (iv) they have purposefully availed themselves of the benefits and protections of the laws in this jurisdiction, and (v) they reasonably anticipate or should anticipate that they would be haled into court in this jurisdiction.

14.     The general and specific jurisdiction over each of the John Doe defendants shall be fully averred at the time that they are identified.

15.     Pursuant to 28 U.S.C. Section 1391(b), venue is proper in this judicial district because V10's principal place of business is in this judicial district; the V10 Defendants are subject to personal jurisdiction in this venue; and the events giving rise to the claims set forth in this Complaint substantially occurred in this judicial district.

## FACTS MATERIAL TO ALL CLAIMS

16.     In or about August 2016, Junior formed a Florida corporation by the name of V10 Sports Car Corp.

17.     The sports car business apparently never materialized and in August 2018, Junior changed the name of the corporation to V10 Global Logistics and Trading Corp., although V10 claims it still is a sponsor of sports car racing.  The racing images still reside on the V10 website, a tribute to V10's affection for the sport.

18.     Recently, Junior formed two additional corporations - V10 Sports Cars Corp. and V10 Sports Cars Miami Corp.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 6

19.     V10 vaunts its experience and expertise in the frozen meat distribution industry on

its website as follows:

> Our 15 years of experience in the market enable us to be your strategic partner who
> knows how to navigate in ever-changing market conditions. We have a long-lasting
> relationship with a network of [the] most reputable protein suppliers in the industry
> and can always provide you [with the] highest quality product for your price range.

https://v10logistics.com/about-us   (as   of   April   3,   2022).   V10   published   this   language

approximately three years or less after changing from a car company to a logistics company.

20.     V10 does not have 15 years of experience in the market.

21.     V10 did not have a long-lasting relationship with a network of the most reputable

protein suppliers.  Nevertheless, V10 touted its purported experience and influence with suppliers

as a means to induce companies such as GO Global to do business with it.

22.     Notably, suppliers in the frozen meat industry customarily only do business with

a limited number of companies. For example, one supplier, Cooperative Agroindustrial Consolata

("Copacol"), is a major world leader in producing frozen chicken parts and is a highly desirable

source  for  companies  such  as  GO  Global  as  it  provides  the  resources  to  deliver  numerous

containers to customers at destination ports. However, GO Global had no direct contact or ability

to purchase from companies such as Copacol and resultingly required intermediary vendors that

could provide it with that type of access.

23.     GO Global purchases and resells frozen chicken and pork products worldwide both

on its own behalf and in connection with various investors and participants. Generally, GO Global

purchases multiple containers of these products for ultimate distribution to wholesalers and large-

scale food operations. GO Global, at times material to this Complaint, sought to serve customers

who were seeking to receive containers of frozen chicken and pork products in various ports in

China and other locations.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 7

24.     The process for purchasing and reselling is extremely complicated, involving customs compliance in multiple countries, careful food safety and preservation, large-scale shipping and logistical arrangements, careful tracking of shipping schedules, warehousing, distribution, financial precision, segregation of account information, and contract compliance.

25.     GO Global, like others occupying the same position in the marketplace, cannot be at the source, destination, shipping locations and other logistical points in the complex large-scale meat distribution chain, and therefore must place substantial trust and reliance on suppliers and sellers in the industry.

26.     In addition, V10, like its competitors, will sometimes conduct its business through brokers, who act for disclosed principals. In V10's case, it often utilized an entity known as IMC Europe SP. Z.O.O. Sp.K. ("IMC"). IMC disclosed to GO Global, in all instances, when it was transacting business on behalf of V10 as the seller.

27.     Beginning in approximately September 2020, V10, through Junior and Fedele, and through those V10 representatives whom Junior and Fedele authorized to speak on V10's behalf, advised GO Global that V10, by virtue of its experience and marketplace influence, had a favorable relationship with Copacol and other suppliers, such as Cooperative Agroindustrial Lta.(C.Vale); Rivelli Alimentos, S.A. (Rivelli); Alibem Estrela, Ltda. (Alibem);  La Piamontesa de Averaldo Giacosa Y Cia, S.A.; Campo Austral, SA; Alimantaria La Pompeya, S.A., Tutto Porky, S.S.r.L; and Frigorifico Qualita, S.A., and could obtain from those suppliers the container loads that GO Global needed for its customers and could arrange for them to be timely shipped to the required destination ports.

28.     In fact, V10 was able to purchase from Copacol and other suppliers but had no special or favored relationship with those suppliers over any other customer of those suppliers.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 8

V10 thus persuaded GO Global to commence doing business with it. Beginning in or about September 2020, GO Global commenced ordering frozen meat products from V10.

29.     V10's commercial relationship with GO Global was as a vendor. GO Global would order quantities of frozen meat parts, that V10 would acquire from suppliers. V10 was then obligated to coordinate the logistics for the shipments of those products so that the containers arrived in a timely manner at the destination ports that GO Global would designate. Thus, if GO Global, for example, had sought to purchase a certain quantity of containers of frozen chicken to be delivered to a particular port in China, it would contact V10 (or its agent, IMC) and advise V10 of the order and the destination. V10 would invoice GO Global, which would pay the required deposit or purchase price. It would then be V10's function to order the products from the supplier and to coordinate the shipping arrangements to get the product from origin to destination. V10 would notify GO Global of these shipping arrangements.

30.     Usually, the shipments required GO Global to pay a deposit of 30 percent of the purchase price, for which V10 would invoice GO Global, either directly or through its agent, IMC, after GO Global would place its order with V10. V10's suppliers required V10 to pay a deposit as well, prior to processing the order. All orders were placed by email or other internet-based communication.

31.     All V10 invoices were sent, either directly or through its agent, IMC, by email or by other internet-based communication.

32.     Almost every communication between V10 and the Individual Defendants, on the one hand, and GO Global, on the other hand, were via WhatsApp, including both voice and text messaging, email, or other Internet-based communication.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 9

33.     GO Global, of course, was not privy to nor involved in any way, with the interactions between V10 and the suppliers and GO Global had no means of verifying anything that V10 communicated to GO Global concerning the actions that the suppliers were taking or the conditions that the suppliers might be imposing on any purchasers.

34.     Initially, in its dealings with V10, GO Global's orders were smaller than they would later become. There were problems with some of these initial orders, including orders that were placed with incorrect consignees designated (*i.e.*, the orders did not reflect the identity of the correct GO Global customer to receive the products). V10 falsely blamed the suppliers for these errors.

35.     From the outset of the relationship with V10, GO Global also experienced difficulties with V10 as shipment dates that V10 had promised were not met.

36.     These early problems were mostly resolved or tolerable and GO Global developed a trust in V10 as V10 appeared generally to be complying with its obligations, with shipments usually arriving at their required destinations and transactions generally occurring as agreed or reasonably close thereto in the vast majority of instances. On occasion, GO Global would experience a delay or problem with a shipment but there was no reason at that time to suspect improprieties or intentional misconduct.

37.     GO Global's confidence and belief that V10 was a legitimate and competent vendor grew over time and the quantities that GO Global's  order increased substantially.

38.      In order to initiate its purchases with V10, GO Global would submit a purchase order or a purchase contract either directly to V10 or through IMC, which acted on behalf of V10 and at V10's direction. These purchase orders typically took the form of emails in which GO Global would confirm the quantities and types of products it was purchasing.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 10

39.     From September 2020 through mid-2021, GO Global placed thousands of such orders. Of these orders, V10 failed, refused, and/or could not, due to its frauds and misconduct, complete the shipment of approximately 2,060 orders.  Accordingly, it is not feasible to attach to this Complaint all orders, invoices, and related transactional documents. Attached instead as Exhibit "1" to this Complaint is a detailed spreadsheet setting forth, in summary fashion, the order dates, the invoice dates, quantities, containers, prices, promised delivery dates, and other relevant details of the transactions.[2]

40.     Once V10 received the purchase orders or contracts, it submitted invoices or caused invoices to be submitted to GO Global.

41.     As stated above, in the ordinary course, V10 would require a 30 percent deposit of the full price prior to shipping, with the balance due upon completion of the shipment. However, beginning in or about December 2020, V10, through the direction of the Individual Defendants, made repeated false representations to GO Global by email, WhatsApp, telephone and other wire services, that it could secure significant reductions in the price of products through Copacol. Specifically, V10 represented that Copacol was offering V10 reduced prices for full advance payment and V10 was thus able to offer the discounts in turn to GO Global.  The purported discounts varied each month according to the Individual Defendants' representations.

42.     Unbeknownst to GO Global, Copacol had made no such arrangements with V10. V10, through the Individual Defendants, was simply perpetuating a scheme to obtain large payments from GO Global for shipments that V10 would never complete.

---

[2]This spreadsheet is attached to the filed copy of this Complaint as a "pdf" document. It will be produced to Defendants or their counsel as an Excel spreadsheet which includes additional columns (not shown on the pdf in order to enable essential columns to fit within the pdf format).

43.     Incentivized by this proposed discount, and having developed a trust in V10, GO Global was interested in placing additional orders with V10. In order to fund the increased amounts necessary to make full payments in advance, GO Global located investors, who would assist GO Global in funding the purchases, in exchange for a share of the profit to be realized from the discounted pricing.

44.     GO Global would confirm with V10 or its agent each shipment and the details relating thereto, including the shipping line, the goods and quantities to be delivered, the estimated arrival date at destination, balance of payment due (if any), and other important terms.

45.     From the outset of the relationship with V10, and with ever increasing frequency, GO Global experienced difficulties with V10 as shipment dates that V10 had promised were not met. V10, through the Individual Defendants, and a V10 employee named Carolina Camargo and others, would offer GO Global different excuses with these delays, but GO Global would ultimately learn of the following fraudulent acts (and variations or combinations thereof) that were occurring:

a.  V10, through the Individual Defendants, or through others acting at the direction of the Individual Defendants, would encourage GO Global to place large orders, assuring that the orders could and would be placed and shipped in a timely manner. Accordingly, GO Global would place large orders and V10 would invoice GO Global for the full orders, requiring a 30 percent deposit from GO Global. However, V10 would only place a small fraction of the order with its suppliers and pay only a fractional deposit with its suppliers, or would place no order at all with the suppliers. As a result, the full shipments never occurred, and the V10 Defendants knew the full shipments would not and could not occur since they had never ordered them. Then, when GO Global would inquire about the shipments and urge V10 to resolve the delays, V10's

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 12

representatives, at the direction of the Individual Defendants, would lie to GO Global about the status of the shipments and the reasons for the delays. In the case of CVale (one of the suppliers), for example, GO Global had ordered and paid for 120 containers through V10, with only 5 of those containers actually arriving. These lies are memorialized in numerous WhatsApp and WeChat messenger texts and voice messages.

b.  V10 had paid its suppliers deposits for some of the orders it had placed on behalf of GO Global to create an appearance that orders were being processed. However, as set forth above, those orders were either (1) smaller in quantity than the amounts GO Global had actually ordered from V10, (2) were not fully paid by V10 even though GO Global had fully paid, or (3) were otherwise inconsistent with GO Global's orders. Accordingly, V10, at the direction of the Individual Defendants, did not and would not complete the purchases with its suppliers, which completion would have required V10 to pay the unpaid balances on the shipments. As a consequence, the suppliers, not having received the payment they were due, would either resell the cargo, causing GO Global the forfeiture of the goods and the costs they had incurred for those products, or GO Global or its customers would incur additional purchase costs and substantial demurrage costs in their efforts to secure the release of those products.

c.  By the second quarter of 2021, there were severe delays of shipments and/or non-shipment of products ordered by GO Global. Notwithstanding the fact that V10 had collected the required payments for all these shipments, whether deposits or payments in full, the V10 Defendants refused to ship the products unless and until GO Global paid deposits on new orders that GO Global had placed. Under its agreements with GO Global, V10 was required to ship all orders for which GO Global had paid the agreed upon 30 percent deposit upon payment of that deposit. But V10, at the direction of the Individual Defendants, had not done so for many of the

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 13

orders placed in January through May 2021. GO Global, of course, was unaware of the fact that V10 had not fulfilled GO Global's cargo, and Junior and Fedele, along with V10 personnel acting at the direction of Junior and Fedele, had previously, frequently, and falsely represented to GO Global that this cargo had shipped and/or that all shipping scheduling and commitments had been completed. Thus, in the summer of 2021, V10 informed GO Global that it either had to pay additional deposits on newly placed orders or give up the orders that GO Global had previously placed and paid for. Under these demands and in a desperate hope that V10 would cause the older cargo to be shipped and released, GO Global did pay additional deposits to V10, but the V10 Defendants simply seized the additional funds without releasing or shipping any cargo.

        d. In 2020 and early 2021, GO Global placed orders with V10 for frozen pork products. V10 failed to place these orders with pork suppliers, and as a consequence, the products did not ship. GO Global was not aware that V10 had failed to place the orders with suppliers; GO Global was simply aware that the products had not yet shipped yet. Meanwhile, the pork market "crashed," and pork prices dropped drastically in China. This placed GO Global in a precarious position with its customers, who, already upset with the protracted delays, were unwilling to pay the previous, higher prices for products they had not received, that had not shipped, and that could now be purchased for substantially lower prices. Accordingly, GO Global renegotiated pork prices with V10 for the placed orders, and V10 agreed to provide credit notes, thus reducing the purchase price for the pork products in certain instances. V10 then placed some of the orders. However, V10 subsequently advised GO Global that there was no discount and the full price, with no discount or credit note reduction, had to be paid if the cargo was to be released. V10 thus required an *additional* payment from GO Global of approximately $3.8 million. As the goods had been shipped and were waiting in port, GO Global had no choice but to pay the amount demanded or the goods would not

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 14

be released for delivery to GO Global's customers. Meanwhile, V10, through the Individual

Defendants, disparaged GO Global, representing to suppliers and other vendors in the industry that

GO Global had "short paid" V10.

       e. V10, at the direction of the Individual Defendants, falsified container

documents, shipping documents, delivery documents, and emails from its suppliers, and provided

these false documents to GO Global to cause GO Global to believe that orders had been made,

shipments were underway, and that circumstances with V10, its suppliers, shippers, and others

were as the V10 Defendants were falsely depicting to GO Global. The V10 Defendants used

emails, phone calls and texts to wire this false and fraudulent information to GO Global in order

to perpetuate their scheme. Examples of these falsified documents are attached hereto as

Composite Exhibit "2."

       f. GO Global paid and/or caused to be paid all invoices for all deposits and/or

payments in full to V10, as required and agreed. The total amount that V10 was paid for products

that it never delivered is in excess of $48 million.

      46.    In addition, in the same manner as described hereinabove, GO Global coordinated

millions of dollars of additional orders with the V10 Defendants on behalf of other investors, which

orders V10 also falsely and fraudulently mishandled.

      47.    In August 2021, GO Global learned the extent of the V10 Defendants' frauds and

lies.

      48.    In or about August 2021, GO Global learned that Copacol had never offered V10

reduced prices in exchange for full payments.

      49.    In or about August 2021, GO Global learned that Defendants had falsified

documents in an effort to mislead GO Global and obtain continued payments from GO Global.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 15

50.     In or about August 2021, GO Global learned that V10 had not paid its suppliers from the deposits and payments that GO Global had made to V10 and that shipments were therefore getting resold and delivered goods were incurring ongoing and severe demurrage charges.

51.     V10 has acknowledged its relationship with, and responsibility and obligations to GO Global and has represented that V10 would return all deposits paid to GO Global.

52.     V10 has not returned any money to GO Global or to its customers.

53.     V10 has not delivered any of the products that are the subject of this action.

54.     Following the non-delivery of the products, all pending contracts and orders were cancelled.

55.     Despite V10's written assurances to GO Global that it would return GO Global's payments and deposits for shipments that weren't delivered, V10 has failed and refused to do so.

56.     The V10 Defendants did not organize V10 as a business to sell and ship meats lawfully and in accordance with commercial standards, good faith, and fair dealing. They organized V10 to obtain, under false pretenses, large sums of money that buyers such as GO Global pay in good faith, with no intention on V10's part to honor its contractual obligations.

57.     The V10 Defendants have engaged in a continuing scheme, utilizing emails, text messages, and other wire fraud, to induce GO Global to pay V10 in excess of $40 million.

58.      In the course of these wrongful activities, and as a means of perpetuating their scheme, the V10 Defendants generated false documents, including false bills of lading and shipping schedules.

59.     In December 2021, the Ministry of Commerce in China alerted domestic importers of Brazilian-sourced frozen meat products of a Ponzi-type scheme in which V10 had defaulted on contracts with more than 43 different Chinese importers since July 2021.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 16

60.     GO Global has retained the undersigned counsel to represent it in connection with its efforts to recover the damages that the V10 Defendants have caused and have agreed to pay its counsel the reasonable attorney's fees and costs incurred in the course of these efforts.

## COUNT I
## BREACH OF CONTRACT
(Against V10)

61.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

62.     On or about December 2, 2020, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

63.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 21/11/2020-4; 11/12/2020-25; 11/12/2020-24; 12/12/2020-2; 403816; 403817; 403824; 403826; 403827; 403832; 403837; 403838; 403839; 403842; and 403880.[3]

64.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of $194,837.28, with any remaining balance to be paid upon arrival of the goods at destination.

65.     GO Global did in fact pay all deposits and payments required under the above described Contract.

66.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

---

[3] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 17

67.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

68.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

69.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

70.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

        a.  Refused to perform its obligations under the Contract;

        b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

        c.  Undertook  steps  that  were  in  violation  and  anticipatory  breaches  of  its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

        d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

        e.  Engaged  in combinations of part or all of the above.

71.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 18

72.      V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

73.      As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT**
(Against V10)

74.      GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

75.      On or about January 16, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

76.      In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 22/01/2021-26; 22/01/2021-2; 22/01/2021-17; 22/01/2021-29; 22/01/2021-18; 22/01/2021-20; 22/01/2021-1; 22/01/2021-27; 22/01/2021-23; 22/01/2021-24; 22/01/2021-21; 22/01/2021-25; 22/01/2021-30; 22/01/2021-16; 22/01/2021-19; 22/01/2021-22; 22/01/2021-8; 22/01/2021-28; 24/01/2021-77;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 19

24/01/2021-80;  24/01/2021-51;  24/01/2021-81;  24/01/2021-82;  24/01/2021-79;  24/01/2021-49;

24/01/2021-23;  24/01/2021-65;  24/01/2021-72;  24/01/2021-76;  24/01/2021-83;  24/01/2021-78;

24/01/2021-55;  24/01/2021-56;  24/01/2021-54;  24/01/2021-59;  24/01/2021-57;  24/01/2021-50;

24/01/2021-58;  24/01/2021-53;  24/01/2021-43;  24/01/2021-61;  24/01/2021-69;  24/01/2021-60;

24/01/2021-47;  24/01/2021-62;  3445366;  3445368;  3445369;  3445371;  3445377;  3445387;

3445388; 3445389; 3445390; 3445391; 3445408; 3445409; 404155; 404167; 404180; 404181;

404182; 404183; 404184; 404185; 404191; 404192; 404193; 404194; 404195; 404196; 404197;

404201; 404202; 404203; 404205; 404206; 404207; 404208; 404209; 404210; 404211; 404212;

404213; 404214; 404216; 404217; 404218; 404225; 404237; 404238; 404239; 404240; 404241;

404242; 404243; 404244; 404245; 404246; 404250; 404251; 404252; 404253; 404254; 404255;

404256; 404257; 404258; 404259; 404260; 404261; 404262; 404267; 404268; 404269; 404270;

404272; 404273; 404274; 404277; 404278; 404279; 404280; 404281; 404282; 404283; 404284;

404285; 404286; 404287; 404288; 404289; 404290; 404291; 404294; 404295; 404296; 404297;

404298; 404299; 404300; 404314; 404315; 404317; 404320; 404321; 404322; 404325; 404326;

404327; 404332; 404346; 404350; 404363; 404364; 404365; 404366; 404367; 404368; 404369;

404370; 404371; 404372; 404373; 404374; 404375; 404376; 404377; 404378; 404379; 404380;

404381; and 404382. [4]

77.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global

was required to pay and did pay a total of  $1,505,122.26, with any remaining balance to be paid

upon arrival of the goods at destination.

78.     GO Global did in fact pay all deposits and payments required under the above

described Contract.

---

[4] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 20

79.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

80.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

81.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

82.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

83.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

    a.  Refused to perform its obligations under the Contract;

    b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

    c.  Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

    d.  Cancelled or refused to honor the Contracts and refused to refund payments that GO Global had made therefor; or

    e.  Engaged in combinations of part or all of the above.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 21

84.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

85.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

86.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
(Against V10)

87.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

88.     On or about February 19, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

89.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 3456988; 3456989; 3456990; 3456991; 3456992; 3456993; 3456994; 3456995; 3456996; 3457009; 3457011;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 22

3457019; 3457020; 3457021; 3457022; 3457025; 3457026; 3457027; 3457029; 3457031;

3457032; 3457033; 3457034; 3457035; 3457036; 3457037; 3457038; 3457039; 3457040;

3457041; 3457042; 3457043; 3457044; 3457045; 3457046; 3457047; 3457048; 3457060;

3457061; 3457062; 3457063; 3457064; 3457065; 3457066; 3457067; 3457068; 3457069;

3457070; 3457071; 3457072; 3457073; 3457074; 3457075; 3457076; 404845; 404846; 404847;

404848; 404849; 404850; 404851; 404852; 404853; 404854; 404855; 404856; 404857; 404858;

404859; 404860; 404861; 404862; 404863; 404864; 404865; 404866; 404867; 404868; 404869;

404870; 404871; 404872; 404873; 404879; 404880; 404881; 404882; 404883; 404889; 404890;

404891; 404892; 404900; 404901; 404905; 404906; 404907; 404908; 404909; 404910; 404911;

404913; 404914; 404915; 404916; 404917; 404918; 404919; 404920; 404921; 404922; 404923;

404924; 404925; 404926; 404927; 404928; 404929; 404930; 404931; 404932; 404933; 404934;

404935; 404936; 404937; 404938; 404939; 404940; 404941; 404942; 404943; 404944; 404953;

404955; 404956; 404959; 404960; 404961; 404962; 404963; 404964; 404965; 404966; 404967;

404968; 404969; 404970; 404971; 404972; 404973; 404974; 404975; 404976; 404977; 404978;

404979; 404980; 404981; 404982; 404983; 404984; 404985; 404986; 25/03/2021-10; 25/03/2021-

71; 25/03/2021-122; 25/03/2021-25; 25/03/2021-28; 25/03/2021-72; 25/03/2021-93; 25/03/2021-

32; 25/03/2021-86; 25/03/2021-84; 25/03/2021-69; 25/03/2021-92; 25/03/2021-78; 25/03/2021-

75;   25/03/2021-119;   25/03/2021-100;   25/03/2021-99;   25/03/2021-106;   25/03/2021-29;

25/03/2021-31; 25/03/2021-126; 25/03/2021-47; 25/03/2021-42; 25/03/2021-52; 25/03/2021-51;

25/03/2021-1; 25/03/2021-135; 25/03/2021-62; 25/03/2021-125; 25/03/2021-110; 25/03/2021-30;

25/03/2021-114; 25/03/2021-20; 25/03/2021-113; 25/03/2021-7; 25/03/2021-59; 25/03/2021-82;

25/03/2021-80; 25/03/2021-103; 25/03/2021-85; 25/03/2021-112; 25/03/2021-111; 25/03/2021-

13; 25/03/2021-56; 25/03/2021-43; 25/03/2021-54; 25/03/2021-123; 25/03/2021-70; 25/03/2021-

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 23

49; 25/03/2021-50; 25/03/2021-73; 25/03/2021-116; 25/03/2021-121; 25/03/2021-118; 25/03/2021-46; 25/03/2021-27; 25/03/2021-91; 25/03/2021-83; 25/03/2021-120; 25/03/2021-21; 25/03/2021-33; 25/03/2021-89; 25/03/2021-24; 25/03/2021-48; 25/03/2021-63; 25/03/2021-88; 25/03/2021-127; 25/03/2021-129; 25/03/2021-17; 25/03/2021-12; 25/03/2021-101; 25/03/2021-81; 25/03/2021-98; 25/03/2021-97; 25/03/2021-109; 25/03/2021-102; 25/03/2021-58; 25/03/2021-6; 25/03/2021-117; 25/03/2021-19; 25/03/2021-128; 25/03/2021-15; 25/03/2021-66; 25/03/2021-11; 25/03/2021-61; 25/03/2021-23; 25/03/2021-108; 25/03/2021-45; 25/03/2021-18; 25/03/2021-34; 25/03/2021-60; 25/03/2021-90; 25/03/2021-94; 25/03/2021-53; 25/03/2021-57; 25/03/2021-74; 25/03/2021-77; 25/03/2021-16; 25/03/2021-105; 25/03/2021-107; 25/03/2021-87; 25/03/2021-9; 25/03/2021-26; 25/03/2021-136; 25/03/2021-124; 25/03/2021-14; 25/03/2021-76; 25/03/2021-8; 25/03/2021-22; 25/03/2021-104; 25/03/2021-96; 25/03/2021-79; 25/03/2021-137; 25/03/2021-55; 25/03/2021-115; 25/03/2021-44; 25/03/2021-95; 25/03/2021-64; 25/03/2021-65; 26/03/2021-17; 26/03/2021-16; 26/03/2021-28; 26/03/2021-25; 26/03/2021-5; 26/03/2021-12; 26/03/2021-1; 26/03/2021-20; 26/03/2021-27; 26/03/2021-31; 26/03/2021-29; 26/03/2021-21; 26/03/2021-18; 26/03/2021-4; 26/03/2021-19; 26/03/2021-3; 26/03/2021-26; 26/03/2021-6; 26/03/2021-9; 26/03/2021-13; 26/03/2021-15; 26/03/2021-10; 26/03/2021-7; 26/03/2021-22; 26/03/2021-30; 26/03/2021-8; 26/03/2021-14; 26/03/2021-24; 26/03/2021-11; 26/03/2021-2; 26/03/2021-23; 27/03/2021-1; 27/03/2021-7; 27/03/2021-13; 27/03/2021-17; 27/03/2021-2; 27/03/2021-16; 27/03/2021-14; 27/03/2021-12; 27/03/2021-9; 27/03/2021-10; 27/03/2021-11; 27/03/2021-20; 27/03/2021-8; 27/03/2021-5; 27/03/2021-15; 27/03/2021-18; 27/03/2021-19; 27/03/2021-4; 27/03/2021-3; 27/03/2021-6; 28/03/2021-4; 28/03/2021-2; 28/03/2021-9; 28/03/2021-8; 28/03/2021-6; 28/03/2021-1; 28/03/2021-10; 28/03/2021-7; 28/03/2021-5; 28/03/2021-3; 30/03/2021-11; 30/03/2021-5; 30/03/2021-4; 30/03/2021-3; 30/03/2021-12;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 24

31/03/2021-9;   31/03/2021-5;   31/03/2021-1;   31/03/2021-8;   31/03/2021-4;   31/03/2021-7;

31/03/2021-2;   31/03/2021-3;   31/03/2021-6;   31/03/2021-20;   31/03/2021-19;   31/03/2021-31;

31/03/2021-33;   31/03/2021-15;   31/03/2021-27;   31/03/2021-11;   31/03/2021-32;   31/03/2021-26;

31/03/2021-29;   31/03/2021-24;   31/03/2021-14;   31/03/2021-25;   31/03/2021-10;   31/03/2021-30;

31/03/2021-18;   31/03/2021-34;   31/03/2021-13;   31/03/2021-28;   31/03/2021-23;   31/03/2021-21;

31/03/2021-12;   31/03/2021-17;   31/03/2021-16;   31/03/2021-22;   32/03/2021-3;   32/03/2021-1;

32/03/2021-2;   32/03/2021-4;   32/03/2021-5;   32/03/2021-11;   32/03/2021-10;   32/03/2021-7;

32/03/2021-6;   32/03/2021-8;   32/03/2021-9;   33/03/2021-3;   33/03/2021-1;   33/03/2021-2;

33/03/2021-4;   34/03/2021-3;   34/03/2021-1;   34/03/2021-2;   34/03/2021-5;   34/03/2021-4;

09/04/2021-14;   09/04/2021-13;   09/04/2021-7;   09/04/2021-11;   09/04/2021-6;   09/04/2021-10;

09/04/2021-5;   09/04/2021-19;   09/04/2021-8;   09/04/2021-12;   09/04/2021-9;   09/04/2021-16;   and

09/04/2021-15. [5]

90.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $4,541,569.78, with any remaining balance to be paid upon arrival of the goods at destination.

91.     GO Global did in fact pay all deposits and payments required under the above described Contract.

92.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

---

[5] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 25

93.      In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

94.      V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

95.      GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

96.      Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

          a.  Refused to perform its obligations under the Contract;

          b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

          c.  Undertook   steps   that   were   in   violation   and   anticipatory   breaches   of   its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

          d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

          e.  Engaged  in combinations of part or all of the above.

97.      V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 26

98.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

99.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT**
(Against V10)

100.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

101.     On or about March 25, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

102.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 37/04/2021-8; 37/04/2021-6;  37/04/2021-13;  37/04/2021-7;  37/04/2021-5;  37/04/2021-10;  37/04/2021-31; 37/04/2021-14; 37/04/2021-9; 37/04/2021-12; 37/04/2021-11; 3469406; 3469407; 3469408; 3469409; 3469410; 3469411; 3469412; 3469413; 3469415; 3469416; 3469417; 3469418;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 27

3469419; 3469420; 3469421; 3469422; 3469423; 3469424; 3469425; 3469426; 3469427;

3469428; 3469429; 3469430; 3469431; 3469432; 3469433; 3469434; 3469435; 3469436;

3469437; 3469438; 3469439; 3469440; 3469441; 3469442; 3469443; 3469444; 3469445;

3469446; 3469447; 3469448; 3469449; 3469450; 3469451; 3469452; 3469453; 3469454;

3469455; 3469456; 3469457; 3469458; 3469459; 3469460; 3469461; 3469462; 3469463;

3469464; 3469465; 3469466; 3469467; 3469468; 3469470; 3469475; 3469482; 3469483;

3469484; 3469485; 3469486; 3469487; 3469488; 3469489; 3469490; 3469491; 3469492;

3469493; 3469494; 3469495; 3469496; 3469497; CGO0401-18; CGO0401-20; CGO0401-21;

CGO0401-6; CGO0401-24; CGO0401-4; CGO0401-2; CGO0401-3; CGO0401-5; CGO0401-9;

CGO0401-14;  CGO0401-11;  CGO0401-12;  CGO0401-8;  CGO0401-22;  CGO0401-23;

CGO0401-16; CGO0401-17; CGO0401-1; CGO0401-7; CGO0401-13; CGO0401-10; CGO0401-

25;  CGO0401-15;  CGO0401-19;  CGO0402-3;  CGO0402-4;  CGO0402-5;  CGO0402-2;

CGO0402-1; CGO0403-5; CGO0403-3; CGO0403-4; CGO0403-2; CGO0403-1; CGO0404-4;

CGO0404-1; CGO0404-2; CGO0404-3; CGO0404-5; CIV0405-18; CIV0405-108; CIV0405-7;

CIV0405-8; CIV0405-36; CIV0405-38; CIV0405-67; CIV0405-16; CIV0405-41; CIV0405-52;

CIV0405-57; CIV0405-17; CIV0405-31; CIV0405-51; CIV0405-62; CIV0405-34; CIV0405-32;

CIV0405-107; CIV0405-105; CIV0405-27; CIV0405-103; CIV0405-14; CIV0405-13; CIV0405-

37; CIV0405-92; CIV0405-91; CIV0405-54; CIV0405-97; CIV0405-98; CIV0405-45; CIV0405-

95; CIV0405-73; CIV0405-46; CIV0405-11; CIV0405-58; CIV0405-9; CIV0405-1; CIV0405-4;

CIV0405-101; CIV0405-65; CIV0405-109; CIV0405-106; CIV0405-87; CIV0405-48; CIV0405-

86;  CIV0405-102;  CIV0405-43;  CIV0405-42;  CIV0405-69;  CIV0405-56;  CIV0405-40;

CIV0405-88; CIV0405-110; CIV0405-50; CIV0405-79; CIV0405-78; CIV0405-74; CIV0405-99;

CIV0405-28; CIV0405-24; CIV0405-30; CIV0405-23; CIV0405-84; CIV0405-100; CIV0405-83;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 28

CIV0405-75; CIV0405-53; CIV0405-61; CIV0405-6; CIV0405-55; CIV0405-68; CIV0405-64;

CIV0405-22; CIV0405-19; CIV0405-70; CIV0405-35; CIV0405-60; CIV0405-25; CIV0405-29;

CIV0405-15; CIV0405-12; CIV0405-96; CIV0405-77; CIV0405-10; CIV0405-59; CIV0405-80;

CIV0405-76; CIV0405-94; CIV0405-71; CIV0405-81; CIV0405-85; CIV0405-26; CIV0405-20;

CIV0405-21; CIV0405-82; CIV0405-89; CIV0405-90; CIV0405-5; CIV0405-33; CIV0405-104;

CIV0405-3; CIV0405-2; CIV0405-66; CIV0405-39; CIV0405-44; CIV0405-63; CIV0405-49;

CIV0405-72; CIV0405-93; CIV0405-47; CIV0406-4; CIV0406-15; CIV0406-20; CIV0406-18;

CIV0406-14; CIV0406-9; CIV0406-11; CIV0406-21; CIV0406-1; CIV0406-3; CIV0406-5;

CIV0406-19; CIV0406-8; CIV0406-7; CIV0406-10; CIV0406-6; CIV0406-17; CIV0406-22;

CIV0406-16; CIV0406-13; CIV0406-2; CIV0406-12; CIV0407-8; CIV0407-9; CIV0407-7;

CIV0407-4; CIV0407-16; CIV0407-11; CIV0407-2; CIV0407-3; CIV0407-10; CIV0407-13;

CIV0407-19; CIV0407-15; CIV0407-14; CIV0407-18; CIV0407-5; CIV0407-12; CIV0407-17;

CIV0407-6; CIV0407-1; CIV0407-20; CIV0408-1; CIV0408-2; CIV0410-12; CIV0410-11;

CIV0410-9; CIV0410-10; CIV0410-13; CIV0410-5; CIV0410-7; CIV0410-2; CIV0410-21;

CIV0410-18; CIV0410-3; CIV0410-8; CIV0410-1; CIV0410-19; CIV0410-4; CIV0410-20;

CIV0410-17; CIV0411-17; CIV0411-12; CIV0411-15; CIV0411-14; CIV0411-20; CIV0411-18;

CIV0411-16; CIV0411-19; CIV0411-11; CIV0411-13; CIV0411-8; CIV0411-7; CIV0411-9;

CIV0411-5; CIV0411-3; CIV0411-2; CIV0411-4; CIV0411-10; CIV0411-6; and CIV0411-1.[6]

103.      Pursuant to the invoices and parties' agreement, under said invoices, GO Global

was required to pay and did pay a total of  $3,280,982.29, with any remaining balance to be paid

upon arrival of the goods at destination.

---

[6] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 29

104.    GO Global did in fact pay all deposits and payments required under the above described Contract.

105.    V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

106.    In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

107.    V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

108.    GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

109.    Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

    a.  Refused to perform its obligations under the Contract;

    b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

    c.  Undertook  steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 30

    d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

    e. Engaged in combinations of part or all of the above.

110.    V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

111.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

112.    As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

    **WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT
### (Against V10)

113.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

114.    In or about May 11, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 31

115.     In confirmation and acceptance of the parties' agreement, V10, issued or caused

to be issued on V10's behalf and benefit the invoices bearing the numbers CGO0501-17;

CGO0501-16; CGO0501-15; CGO0501-1; CGO0501-4; CGO0501-13; CGO0501-12; CGO0501-

6; CGO0501-8; CGO0501-14; CGO0501-18; CGO0501-5; CGO0501-3; CGO0501-7; CGO0501-

2; CGO0501-11; CGO0501-21; CGO0501-24; CGO0501-25; CGO0501-22; CGO0501-23;

CGO0501-20; CGO0501-26; CGO0501-10; CGO0501-19; CGO0501-9; CGO0502-4; CGO0502-

5; CGO0502-6; CGO0502-2; CGO0502-1; CGO0502-3; CGO0503-1; CGO0503-2; CGO0503-4;

CGO0503-3; CGO0504; CGO0505-2; CGO0505-1; CGO0506-4; CGO0506-3; CGO0506-1;

CGO0506-2; CGO0506-6; CGO0506-5; CGO0507-3; CGO0507-6; CGO0507-5; CGO0507-4;

CGO0507-1; CGO0507-2; CGO0508-2; CGO0508-1; CGO0509-1; CGO0509-2; CGO0510-1;

CGO0510-2; 3483251; 3483252; 3483253; 3483254; 3483255; 3483256; 3483257; 3483258;

3483259; 3483260; 3483261; 3483262; 3483263; 3483264; 3483265; 3483266; 3483267;

3483268; 3483269; 3483270; 3483271; 3483272; 3483273; 3483274; 3483275; 3483276;

3483277; 3483278; 3483279; 3483280; 3483281; 3483282; 3483283; 3483284; 3483285;

3483286; 3483287; 3483288; 3483289; 3483290; 3483291; 3483292; 3483293; 3483294;

3483295; 3483296; 3483297; 3483298; 3483299; 3483300; 3483301; 3483302; 3483303;

3483304; 3483305; 3483306; 3483307; 3483308; 3483309; 3483310; 3483311; 3483312;

3483313; 3483314; 3483315; 3483316; 3483317; 3483318; 3483319; 3483320; 3483321;

3483322; 3483323; 3483324; 3483325; 3483326; 3483327; 3483328; 3483329; 3483330;

3483331; 3483332; 3483333; 3483334; 3483335; 3483336; 3483337; 3483338; 3483339;

3483340; 3483341; 3483343; 3483345; 3483346; 3483347; 3483348; 3483349; 3483350;

3483353; 3483354; 3483357; 3483358; 3483359; 3483362; 3483363; 3483364; 3483365;

3483366; 3483367; 3483368; 3483369; 3483370; 3483371; 3483372; 3483373; 3483374;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 32

3483375; 3483376; 3483377; 3483378; 3483379; 3483380; 3483381; 3483382; 3483383; 3483384; 3483385; 3483386; 3483387; 3483388; 3483389; 3483390; 3483391; 3483392; 3483393; #1-34; #1-35; #1-27; #1-21; #1-50; #1-52; #1-26; #1-29; #1-28; #1-01; #1-15; #1-45; #1-43; #1-25; #1-22; #1-03; #1-14; #1-13; #1-18; #1-17; #1-02; #1-19; #1-16; #1-30; #1-33; #1-44; #1-39; #1-48; #1-49; #1-47; #1-53; #1-51; #1-37; #1-40; #1-42; #1-46; #1-07; #1-06; #1-24; #1-23; #1-09; #1-12; #1-08; #1-05; #1-11; #1-10; #2-12; #2-11; #2-15; #2-14; #3-10; #3-11; #3-08; #3-07; #3-09; #3-06; #4-02; #4-01; #6-06; #6-07; #6-09; #6-03; #6-08; #7-05; #7-15; #7-02; #7-03; #7-04; #7-10; #7-01; #7-11; #7-14; #7-13; #7-12; #7-06; #7-09; #7-07; #7-08; #8-04; #8-01; #8-02; #8-03; #9-02; #9-01; #9-04; #9-03; #10-04; and #10-05. [7]

116.    Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $2,577,575.24, with any remaining balance to be paid upon arrival of the goods at destination.

117.    GO Global did in fact pay all deposits and payments required under the above described Contract.

118.    V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

119.    In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

120.    V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

---

[7] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 33

121.    GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

122.    Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

      a. Refused to perform its obligations under the Contract;

      b. Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

      c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

      d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

      e. Engaged in combinations of part or all of the above.

123.    V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

124.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

125.    As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c)

charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT VI**
**BREACH OF CONTRACT**
(Against V10)

126.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

127.     On or about June 16, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

128.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit a series of invoices bearing no invoice numbers[8] but seeking immediate payment for the orders in a total sum of $1,500,000.00

129.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of $1,500,000.00, with any remaining balance to be paid upon arrival of the goods at destination.

130.     GO Global did in fact pay all deposits and payments required under the above described Contract.

---

[8] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 35

131.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

132.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

133.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

134.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

135.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

a.   Refused to perform its obligations under the Contract;

b.   Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c.   Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d.   Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e.   Engaged in combinations of part or all of the above.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 36

136.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

137.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

138.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

### COUNT VII
### BREACH OF CONTRACT
(Against V10)

139.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

140.     On or about March 7, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

141.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 20/02/2021-19; 20/02/2021-20; 20/02/2021-11; 20/02/2021-26; 20/02/2021-6; 20/02/2021-16; 20/02/2021-30;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 37

20/02/2021-23;  20/02/2021-24;  20/02/2021-5;  20/02/2021-29;  20/02/2021-22;  20/02/2021-27;

20/02/2021-21;  20/02/2021-28;  20/02/2021-7;  20/02/2021-15;  20/02/2021-14;  20/02/2021-9;

20/02/2021-13;  20/02/2021-25;  20/02/2021-12;  20/02/2021-18;  20/02/2021-17;  20/02/2021-8;

20/02/2021-3;  20/02/2021-4;  20/02/2021-1;  01/03/2021-21;  01/03/2021-27;  01/03/2021-29;

01/03/2021-28;  01/03/2021-22;  01/03/2021-26;  01/03/2021-30;  01/03/2021-23;  01/03/2021-8;

01/03/2021-4;  01/03/2021-9;  01/03/2021-6;  01/03/2021-10;  01/03/2021-7;  01/03/2021-5;

22/03/2021-17;  22/03/2021-4;  22/03/2021-5;  22/03/2021-6;  22/03/2021-49;  22/03/2021-48;

22/03/2021-29;  22/03/2021-38;  22/03/2021-28;  22/03/2021-40;  22/03/2021-19;  22/03/2021-7;

22/03/2021-2;  22/03/2021-3;  22/03/2021-13;  22/03/2021-10;  22/03/2021-14;  22/03/2021-18;

22/03/2021-24;  22/03/2021-15;  22/03/2021-23;  22/03/2021-25;  22/03/2021-32;  22/03/2021-50;

22/03/2021-26;  22/03/2021-16;  22/03/2021-34;  22/03/2021-9;  22/03/2021-8;  22/03/2021-37;

22/03/2021-27;  22/03/2021-33;  22/03/2021-31;  22/03/2021-39;  22/03/2021-1;  22/03/2021-35;

22/03/2021-22;  22/03/2021-30;  22/03/2021-12;  22/03/2021-11;  22/03/2021-36;  22/03/2021-20;

22/03/2021-21;  22/03/2021-46;  24/03/2021-39;  24/03/2021-11;  24/03/2021-37;  24/03/2021-18;

24/03/2021-3;  24/03/2021-12;  24/03/2021-7;  24/03/2021-36;  24/03/2021-35;  24/03/2021-44;

24/03/2021-31;  24/03/2021-28;  24/03/2021-24;  24/03/2021-23;  24/03/2021-40;  24/03/2021-4;

24/03/2021-8;  24/03/2021-6;  24/03/2021-13;  24/03/2021-32;  24/03/2021-43;  24/03/2021-33;

24/03/2021-30;  24/03/2021-42;  24/03/2021-16;  24/03/2021-20;  24/03/2021-26;  24/03/2021-29;

24/03/2021-19;  24/03/2021-25;  24/03/2021-17;  24/03/2021-27;  24/03/2021-21;  24/03/2021-41;

24/03/2021-34;  24/03/2021-22;  24/03/2021-55;  24/03/2021-15;  24/03/2021-38;  24/03/2021-14;

24/03/2021-5;  24/03/2021-1;  24/03/2021-45;  24/03/2021-2;  36/03/2021-1;  36/03/2021-7;

36/03/2021-12;  36/03/2021-15;  36/03/2021-19;  36/03/2021-16;  36/03/2021-10;  36/03/2021-5;

36/03/2021-4;  36/03/2021-14;  36/03/2021-17;  36/03/2021-3;  36/03/2021-18;  36/03/2021-20;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 38

36/03/2021-8;   36/03/2021-6;   36/03/2021-2;   36/03/2021-9;   36/03/2021-11;   36/03/2021-13;

37/03/2021-8;   37/03/2021-6;   37/03/2021-7;   37/03/2021-9;   37/03/2021-10;   37/03/2021-1;

37/03/2021-5;   37/03/2021-2;   37/03/2021-3;   46/03/2021-3;   46/03/2021-2;   46/03/2021-10;   and

46/03/2021-1.[9]

142.      Pursuant to the invoices and parties' agreement, under said invoices, GO Global

was required to pay and did pay a total of  $1,657,543.50, with any remaining balance to be paid

upon arrival of the goods at destination.

143.      GO Global did in fact pay all deposits and payments required under the above

described Contract.

144.      V10 was obligated to negotiate with GO Global in good faith and was obligated

under the terms of the Contract described in this Count to deliver to the destination indicated at

the time promised the goods set forth in the Contract.

145.      In the Contract described in this Count, V10 assumed the obligations referenced

in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen

meat products to GO Global at designated ports in China.

146.      V10 failed and refused to honor its obligations to GO Global under the Contract

identified in this Count.

147.      GO Global fully performed all obligations and condition precedents to be

performed by GO Global under the Contract identified in this Count.

148.      Subsequent to the formation of the Contract identified in this Count, while GO

Global performed all conditions and obligations required of it prior to delivery under said Contract,

V10:

---

[9] See Paragraph 40, *supra.*

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 39

    a.  Refused to perform its obligations under the Contract;

    b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

    c.  Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

    d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

    e.  Engaged in combinations of part or all of the above.

149.    V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

150.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

151.    As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 40

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT VIII
## BREACH OF CONTRACT
(Against V10)

152.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

153.     In or about the first week of April, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

154.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 19/04/2021-5; 19/04/2021-3; 19/04/2021-8; 19/04/2021-6; 19/04/2021-10; 19/04/2021-19; 19/04/2021-17; 19/04/2021-18; 19/04/2021-7; 19/04/2021-14; 19/04/2021-12; 19/04/2021-2; 19/04/2021-13; 19/04/2021-4; 19/04/2021-1; 19/04/2021-9; 19/04/2021-15; 19/04/2021-11; 19/04/2021-20; 20/04/2021-8; 20/04/2021-3; 20/04/2021-1; 20/04/2021-18; 20/04/2021-11; 20/04/2021-20; 20/04/2021-19; 20/04/2021-5; 20/04/2021-6; 20/04/2021-7; 20/04/2021-4; 20/04/2021-2; 20/04/2021-9; 20/04/2021-10; 20/04/2021-17; 20/04/2021-13; 20/04/2021-14; 20/04/2021-16; 20/04/2021-15; 20/04/2021-12; 21/04/2021-13; 21/04/2021-14; 21/04/2021-26; 21/04/2021-19; 21/04/2021-15; 21/04/2021-23; 21/04/2021-25; 21/04/2021-16; 21/04/2021-21; 21/04/2021-12; 21/04/2021-29; 21/04/2021-22; 21/04/2021-24; 21/04/2021-30; 21/04/2021-11; 21/04/2021-20; 21/04/2021-27; 21/04/2021-18; 21/04/2021-28; 21/04/2021-17; 21/04/2021-7; 21/04/2021-10; 21/04/2021-5; 21/04/2021-6; 21/04/2021-8; 21/04/2021-9; 21/04/2021-3; 21/04/2021-4;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 41

23/04/2021-11;  23/04/2021-9;  23/04/2021-4;  23/04/2021-3;  23/04/2021-5;  23/04/2021-2;

23/04/2021-12; 23/04/2021-20; 23/04/2021-10; 23/04/2021-15; 23/04/2021-17; 23/04/2021-19;

23/04/2021-13;  23/04/2021-18;  23/04/2021-14;  23/04/2021-16;  23/04/2021-8;  26/04/2021-5;

26/04/2021-4; 26/04/2021-2; and 26/04/2021-3.[10]

155.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of $949,401.00, with any remaining balance to be paid upon arrival of the goods at destination.

156.     GO Global did in fact pay all deposits and payments required under the above described Contract.

157.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

158.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

159.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

160.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

161.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

---

[10] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 42

a.  Refused to perform its obligations under the Contract;

b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c.  Undertook  steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e.  Engaged  in combinations of part or all of the above.

162.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

163.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

164.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 43

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

### COUNT IX
### BREACH OF CONTRACT
(Against V10)

165.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

166.    In or about the first half of May, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

167.    In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 45/05/2021-57; 45/05/2021-33; 45/05/2021-56; 45/05/2021-60; 45/05/2021-32; 45/05/2021-59; 45/05/2021-58; 45/05/2021-35; 45/05/2021-31; 45/05/2021-34; 45/05/2021-39; 45/05/2021-37; 45/05/2021-40; 45/05/2021-38; 45/05/2021-36; 45/05/2021-9; 45/05/2021-8; 45/05/2021-2; 45/05/2021-5; 45/05/2021-7; 45/05/2021-10; 45/05/2021-4; 45/05/2021-6; 45/05/2021-1; 45/05/2021-3; 45/05/2021-52; 45/05/2021-42; 45/05/2021-47; 45/05/2021-50; 45/05/2021-45; 45/05/2021-44; 45/05/2021-41; 45/05/2021-46; 45/05/2021-55; 45/05/2021-49; 45/05/2021-54; 45/05/2021-43; 45/05/2021-51; 45/05/2021-53; 45/05/2021-48; 45/05/2021-18; 45/05/2021-27; 45/05/2021-11; 45/05/2021-15; 45/05/2021-23; 45/05/2021-21; 45/05/2021-19; 45/05/2021-25; 45/05/2021-12; 45/05/2021-13; 45/05/2021-16; 45/05/2021-17; 45/05/2021-29; 45/05/2021-26; 45/05/2021-20; 45/05/2021-22; 45/05/2021-24; 45/05/2021-14; 45/05/2021-28; 45/05/2021-30; 46/05/2021-13; 46/05/2021-11; 46/05/2021-15; 46/05/2021-12; 46/05/2021-14; 46/05/2021-5; 46/05/2021-3; 46/05/2021-2; 46/05/2021-4; 46/05/2021-1; 46/05/2021-6; 46/05/2021-8; 46/05/2021-10;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 44

46/05/2021-7;   46/05/2021-9;   47/05/2021-4;   47/05/2021-2;   47/05/2021-1;   47/05/2021-3;

47/05/2021-7;   47/05/2021-5;   47/05/2021-8;   47/05/2021-10;   47/05/2021-9;   47/05/2021-6;

48/05/2021-5;   48/05/2021-11;   48/05/2021-1;   48/05/2021-12;   48/05/2021-10;   49/05/2021-16;

49/05/2021-17;   49/05/2021-19;   49/05/2021-18;   49/05/2021-20;   49/05/2021-2;   49/05/2021-1;

49/05/2021-5;   49/05/2021-3;   49/05/2021-4;   49/05/2021-6;   49/05/2021-12;   49/05/2021-14;

49/05/2021-10;   49/05/2021-9;   49/05/2021-8;   49/05/2021-13;   49/05/2021-11;   49/05/2021-15;

49/05/2021-7;   50/05/2021-9;   50/05/2021-10;   50/05/2021-2;   50/05/2021-3;   50/05/2021-1;

50/05/2021-7;   50/05/2021-4;   50/05/2021-6;   50/05/2021-5;   50/05/2021-8;   51/05/2021-1;

51/05/2021-2; 52/05/2021-3; 52/05/2021-4; 52/05/2021-2; 52/05/2021-5; and 52/05/2021-1.[11]

168.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $1,580,148.00, with any remaining balance to be paid upon arrival of the goods at destination.

169.     GO Global did in fact pay all deposits and payments required under the above described Contract.

170.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

171.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

172.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

---

[11] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 45

173.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

174.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

      a. Refused to perform its obligations under the Contract;

      b. Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

      c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

      d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

      e. Engaged  in combinations of part or all of the above.

175.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

176.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

177.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c)

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 46

charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT X
## BREACH OF CONTRACT
(Against V10)

178.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

179.     In or about the second half of April, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

180.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit an invoice bearing the number 24/12/2020-1.[12]

181.     Pursuant to the invoices and parties' agreement, under said invoice, GO Global was required to pay and did pay a total of $20,088.00, with any remaining balance to be paid upon arrival of the goods at destination.

182.     GO Global did in fact pay all deposits and payments required under the above described Contract.

183.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

---

[12] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 47

184.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

185.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

186.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

187.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

        a.  Refused to perform its obligations under the Contract;

        b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

        c.  Undertook  steps  that  were  in  violation  and  anticipatory  breaches  of  its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

        d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

        e.  Engaged  in combinations of part or all of the above.

188.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 48

189.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

190.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT XI**
**BREACH OF CONTRACT**
(Against V10)

191.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

192.     In or about the second half of April, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

193.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 24/04/2021-1; 24/04/2021-2;  24/04/2021-4;  24/04/2021-19;  24/04/2021-20;  24/04/2021-6;  24/04/2021-7; 24/04/2021-9;  24/04/2021-5;  24/04/2021-8;  24/04/2021-18;  24/04/2021-3;  24/04/2021-31;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 49

24/04/2021-15; 24/04/2021-16; 24/04/2021-17; 24/04/2021-34; 24/04/2021-54; 24/04/2021-52; and 24/04/2021-53; 24/04/2021-50.[13]

194.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $375,480.00, with any remaining balance to be paid upon arrival of the goods at destination.

195.     GO Global did in fact pay all deposits and payments required under the above described Contract.

196.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

197.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

198.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

199.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

200.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

         a. Refused to perform its obligations under the Contract;

---

[13] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 50

b. Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e. Engaged in combinations of part or all of the above.

201.    V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

202.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

203.    As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 51

## COUNT XII
## BREACH OF CONTRACT
(Against V10)

204.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

205.     On or about January 20, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

206.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers

207.     12/01/2021-1;  12/01/2021-3;  12/01/2021-4;  12/01/2021-14;  12/01/2021-15; 12/01/2021-9;  12/01/2021-6;  12/01/2021-7;  12/01/2021-12;  12/01/2021-2;  21/01/2021-8; 21/01/2021-7; 21/01/2021-2; and 21/01/2021-9.[14]

208.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $340,704.00, with any remaining balance to be paid upon arrival of the goods at destination.

209.     GO Global did in fact pay all deposits and payments required under the above described Contract.

210.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

211.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

---

[14] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 52

212.    V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

213.    GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

214.    Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

> a.  Refused to perform its obligations under the Contract;

> b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

> c.  Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

> d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

> e.  Engaged in combinations of part or all of the above.

215.    V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

216.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 53

217.     As a direct and proximate result of V10's breaches of the Contracts, GO Global

has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges

paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c)

charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost

profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation;

(h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and

consequential damages, and special damages as set forth above, plus costs, pre-judgment interest

and post-judgment interest, and such further relief as this Court deems just and proper.

### COUNT XIII
### BREACH OF CONTRACT
(Against V10)

218.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of

this Complaint as if fully restated herein.

219.     On or about February 10, 2021, GO Global negotiated the terms of an agreement

with V10 through emails and telephone conversations.

220.     In confirmation and acceptance of the parties' agreement, V10, issued or caused

to be issued on V10's behalf and benefit the invoices bearing the numbers

221.     07/02/2021-5;  07/02/2021-3;  07/02/2021-1;  07/02/2021-2;  07/02/2021-4;

07/02/2021-6; 07/02/2021-7; 07/02/2021-8; 07/02/2021-9; and 07/02/2021-10.[15]

222.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global

was required to pay and did pay a total of  $47,871.00, with any remaining balance to be paid upon

arrival of the goods at destination.

---

[15] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 54

223.    GO Global did in fact pay all deposits and payments required under the above described Contract.

224.    V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

225.    In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

226.    V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

227.    GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

228.    Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

      a.  Refused to perform its obligations under the Contract;

      b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

      c.  Undertook  steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

    d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

    e. Engaged in combinations of part or all of the above.

229. V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

230. V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

231. As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT XIV
## BREACH OF CONTRACT
(Against V10)

232. GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

233. On or about May 10, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 56

234.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 08/04/2021-3; 33/04/2021-5; 01/05/2021-13; 01/05/2021-14; and 01/05/2021-9.[16]

235.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of $74,760.00, with any remaining balance to be paid upon arrival of the goods at destination.

236.     GO Global did in fact pay all deposits and payments required under the above described Contract.

237.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

238.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

239.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

240.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

241.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

        a.  Refused to perform its obligations under the Contract;

---

[16] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 57

b. Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e. Engaged in combinations of part or all of the above.

242. V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

243. V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

244. As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 58

## COUNT XV
## BREACH OF CONTRACT
(Against V10)

245.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

246.     At or about the end of January, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

247.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 26/01/2021-8; 26/01/2021-9; 26/01/2021-10; 26/01/2021-6; 26/01/2021-7; 26/01/2021-1; 26/01/2021-2; 26/01/2021-3; 26/01/2021-4; 26/01/2021-5; 02/02/2021; 28/01/2021-8; 28/01/2021-10; 28/01/2021-9; 28/01/2021-6; and 28/01/2021-5.[17]

248.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $385,392.00, with any remaining balance to be paid upon arrival of the goods at destination.

249.     GO Global did in fact pay all deposits and payments required under the above described Contract.

250.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

251.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

---

[17] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 59

252.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

253.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

254.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

   a.  Refused to perform its obligations under the Contract;

   b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

   c.  Undertook  steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

   d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

   e.  Engaged  in combinations of part or all of the above.

255.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

256.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 60

257.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT XVI
## BREACH OF CONTRACT
(Against V10)

258.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

259.     In or about the beginning of February 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

260.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 11/02/2021-7; 11/02/2021-30; and 11/02/2021-34.

261.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $71,484.00, with any remaining balance to be paid upon arrival of the goods at destination.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 61

262.     GO Global did in fact pay all deposits and payments required under the above described Contract.

263.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

264.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

265.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

266.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

267.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

a.   Refused to perform its obligations under the Contract;

b.   Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c.   Undertook  steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 62

d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e. Engaged  in combinations of part or all of the above.

268.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

269.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

270.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT XVII**
**BREACH OF CONTRACT**
(Against V10)

271.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

272.     On or about March 8, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 63

273.     In confirmation and acceptance of the parties' agreement, V10, issued or caused

to be issued on V10's behalf and benefit the invoices bearing the numbers 15/03/2021-4;

15/03/2021-9; 15/03/2021-12; 15/03/2021-13; 15/03/2021-14; 15/03/2021-15; 15/03/2021-10;

15/03/2021-11; 16/03/2021-10; 16/03/2021-8; 16/03/2021-9; 16/03/2021-4; 17/03/2021-6;

17/03/2021-5; 17/03/2021-1; 17/03/2021-3; 18/03/2021-4; 18/03/2021-5; 18/03/2021-6;

18/03/2021-7; 18/03/2021-9; and 18/03/2021-10.[18]

274.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global

was required to pay and did pay a total of  $612,864.00, with any remaining balance to be paid

upon arrival of the goods at destination.

275.     GO Global did in fact pay all deposits and payments required under the above

described Contract.

276.     V10 was obligated to negotiate with GO Global in good faith and was obligated

under the terms of the Contract described in this Count to deliver to the destination indicated at

the time promised the goods set forth in the Contract.

277.     In the Contract described in this Count, V10 assumed the obligations referenced

in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen

meat products to GO Global at designated ports in China.

278.     V10 failed and refused to honor its obligations to GO Global under the Contract

identified in this Count.

279.     GO Global fully performed all obligations and condition precedents to be

performed by GO Global under the Contract identified in this Count.

---

[18] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 64

280.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

a.  Refused to perform its obligations under the Contract;

b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c.  Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e.  Engaged in combinations of part or all of the above.

281.     V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

282.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

283.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 65

profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation;

(h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

 **WHEREFORE**, GO Global demands judgment against V10 for compensatory and

consequential damages, and special damages as set forth above, plus costs, pre-judgment interest

and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT XVIII**
**BREACH OF CONTRACT**
(Against V10)

 284. GO Global realleges and incorporates by reference Paragraphs 1 through 60 of

this Complaint as if fully restated herein.

 285. In or about the second half of May, 2021, GO Global negotiated the terms of an

agreement with V10 through emails and telephone conversations.

 286. In confirmation and acceptance of the parties' agreement, V10, issued or caused

to be issued on V10's behalf and benefit the invoices bearing the numbers 11/04/2021-3;

11/04/2021-4;   11/04/2021-5;   11/04/2021-6;   11/04/2021-7;   11/04/2021-8;   11/04/2021-9;

11/04/2021-10;  11/04/2021-11;  11/04/2021-12;  11/04/2021-13;  11/04/2021-1;  11/04/2021-2;

12/04/2021-10;  12/04/2021-11;  12/04/2021-1;  12/04/2021-3;  12/04/2021-12;  12/04/2021-4;

12/04/2021-5;   12/04/2021-6;   12/04/2021-7;   13/04/2021-9;   13/04/2021-8;   13/04/2021-6;

13/04/2021-1;   13/04/2021-2;   13/04/2021-3;   13/04/2021-7;   14/04/2021-10;  14/04/2021-11;

14/04/2021-12;  14/04/2021-7;   14/04/2021-8;   14/04/2021-9;   14/04/2021-3;   14/04/2021-4;

14/04/2021-2;   14/04/2021-1;   14/04/2021-6;   15/04/2021-7;   15/04/2021-8;   15/04/2021-1;

15/04/2021-2;   15/04/2021-3;   15/04/2021-4;   15/04/2021-5;   15/04/2021-6;   16/04/2021-4;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 66

16/04/2021-5;  16/04/2021-6;  16/04/2021-2;  16/04/2021-3;  16/04/2021-1;  17/04/2021-14;  and

17/04/2021-3.[19]

287.    Pursuant to the invoices and parties' agreement, under said invoices, GO Global

was required to pay and did pay a total of  $1,241,627.76, with any remaining balance to be paid

upon arrival of the goods at destination.

288.    GO Global did in fact pay all deposits and payments required under the above

described Contract.

289.    V10 was obligated to negotiate with GO Global in good faith and was obligated

under the terms of the Contract described in this Count to deliver to the destination indicated at

the time promised the goods set forth in the Contract.

290.    In the Contract described in this Count, V10 assumed the obligations referenced

in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen

meat products to GO Global at designated ports in China.

291.    V10 failed and refused to honor its obligations to GO Global under the Contract

identified in this Count.

292.    GO Global fully performed all obligations and condition precedents to be

performed by GO Global under the Contract identified in this Count.

293.    Subsequent to the formation of the Contract identified in this Count, while GO

Global performed all conditions and obligations required of it prior to delivery under said Contract,

V10:

    a.  Refused to perform its obligations under the Contract;

---

[19] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 67

b. Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e. Engaged in combinations of part or all of the above.

294. V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

295. V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

296. As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 68

## COUNT XIX
## BREACH OF CONTRACT
(Against V10)

297.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

298.     On or about January 14, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

299.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 20/01/2021-10; 20/01/2021-11; 20/01/2021-7; 20/01/2021-14; 20/01/2021-12; 20/01/2021-2; and 20/01/2021-5.[20]

300.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $171,528.00, with any remaining balance to be paid upon arrival of the goods at destination.

301.     GO Global did in fact pay all deposits and payments required under the above described Contract.

302.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

303.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

304.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

---

[20] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 69

305.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

306.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

a.  Refused to perform its obligations under the Contract;

b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

c.  Undertook   steps   that   were   in   violation   and   anticipatory   breaches   of   its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e.  Engaged  in combinations of part or all of the above.

307.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

308.     V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

309.     As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c)

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 70

charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT XX**
**BREACH OF CONTRACT**
(Against V10)

310.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

311.     On or about February 23, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

312.     In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 15/02/2021-28; 15/02/2021-33; 15/02/2021-34; 15/02/2021-7; 15/02/2021-8; 15/02/2021-21; 15/02/2021-24; 15/02/2021-25; 15/02/2021-26; 15/02/2021-1; 15/02/2021-2; 15/02/2021-9; 15/02/2021-10; 15/02/2021-3; 15/02/2021-13; 15/02/2021-31; 15/02/2021-32; 15/02/2021-14; 15/02/2021-15; 15/02/2021-11; 15/02/2021-29; 15/02/2021-30; 15/02/2021-12; 15/02/2021-4; 15/02/2021-27; 15/02/2021-5; 15/02/2021-37; 15/02/2021-18; 15/02/2021-6; 15/02/2021-17; 15/02/2021-19; 15/02/2021-22; 15/02/2021-23; 15/02/2021-35; 15/02/2021-16; and 15/02/2021-38.[21]

---

[21] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 71

313.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $998,250.00, with any remaining balance to be paid upon arrival of the goods at destination.

314.     GO Global did in fact pay all deposits and payments required under the above described Contract.

315.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

316.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

317.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

318.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

319.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

a. Refused to perform its obligations under the Contract;

b. Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 72

      c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

      d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

      e. Engaged in combinations of part or all of the above.

320. V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

321. V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

322. As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT XXI**
**BREACH OF CONTRACT**
(Against V10)

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 73

323.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

324.    On or about February 25, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

325.    In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 06/03/2021-11; 06/03/2021-17; 06/03/2021-18; 06/03/2021-22; 06/03/2021-23; 06/03/2021-1; 06/03/2021-2; 06/03/2021-3; 06/03/2021-4; 06/03/2021-5; 06/03/2021-19; 06/03/2021-9; 06/03/2021-27; 06/03/2021-16; 06/03/2021-7; 06/03/2021-28; 06/03/2021-8; 06/03/2021-10; 06/03/2021-25; 06/03/2021-15; 06/03/2021-20; 06/03/2021-21; 06/03/2021-29; 06/03/2021-26; 08/03/2021-1; 08/03/2021-2; 08/03/2021-3; 08/03/2021-4; 08/03/2021-12; 08/03/2021-13; 08/03/2021-5; 08/03/2021-6; 08/03/2021-7; 08/03/2021-8; 08/03/2021-9; 08/03/2021-14; 08/03/2021-15; 08/03/2021-10; 08/03/2021-11; 08/03/2021-16; 08/03/2021-17; 39/03/2021-8; 39/03/2021-5; 39/03/2021-6; 39/03/2021-2; 39/03/2021-3; 39/03/2021-4; 40/03/2021-2; 40/03/2021-5; 40/03/2021-6; 40/03/2021-7; 40/03/2021-8; 40/03/2021-4; 41/03/2021-10; 41/03/2021-1; 41/03/2021-5; 41/03/2021-6; 41/03/2021-3; 41/03/2021-7; 41/03/2021-2; 41/03/2021-9; 41/03/2021-8; 41/03/2021-4; 42/03/2021-9; 42/03/2021-10; 42/03/2021-3; 42/03/2021-6; 42/03/2021-7; 42/03/2021-5; 42/03/2021-2; 42/03/2021-8; 42/03/2021-1; 42/03/2021-4; 43/03/2021-5; 43/03/2021-3; 43/03/2021-4; 43/03/2021-2; 43/03/2021-1; 44/03/2021-3; 44/03/2021-1; 44/03/2021-2; 44/03/2021-5; 44/03/2021-4; 45/03/2021-5; 45/03/2021-3; 45/03/2021-4; and 65/03/2021-3.[22]

---

[22] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 74

326.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of $2,333,772.00 with any remaining balance to be paid upon arrival of the goods at destination.

327.     GO Global did in fact pay all deposits and payments required under the above described Contract.

328.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

329.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

330.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

331.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

332.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

a.  Refused to perform its obligations under the Contract;

b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 75

c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

e. Engaged in combinations of part or all of the above.

333. V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

334. V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

335. As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT XXII
## BREACH OF CONTRACT
### (Against V10)

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 76

336.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

337.    In or about the second half of April, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

338.    In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 28/04/2021-1; 28/04/2021-2; 28/04/2021-3; 28/04/2021-14; 28/04/2021-15; 28/04/2021-7; 28/04/2021-6; 28/04/2021-8; 28/04/2021-9; 28/04/2021-4; 28/04/2021-5; 29/04/2021-1; 29/04/2021-2; 29/04/2021-3; 29/04/2021-5; 29/04/2021-6; 29/04/2021-7; 29/04/2021-8; 29/04/2021-9; 30/04/2021-9; 30/04/2021-10; 30/04/2021-11; 30/04/2021-1; 30/04/2021-2; 30/04/2021-8; 30/04/2021-3; 30/04/2021-4; 30/04/2021-6; 30/04/2021-7; 31/04/2021-1; 31/04/2021-2; 31/04/2021-9; 31/04/2021-10; 31/04/2021-5; 31/04/2021-6; 31/04/2021-7; 31/04/2021-8; 31/04/2021-14; 31/04/2021-4; 32/04/2021-6; 32/04/2021-7; 32/04/2021-8; 32/04/2021-9; 32/04/2021-1; 32/04/2021-3; 32/04/2021-4; and 32/04/2021-5.[23]

339.    Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $1,375,080.00, with any remaining balance to be paid upon arrival of the goods at destination.

340.    GO Global did in fact pay all deposits and payments required under the above described Contract.

341.    V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

---

[23] See Paragraph 40, *supra*.

342.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

343.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

344.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

345.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

   a.  Refused to perform its obligations under the Contract;

   b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

   c.  Undertook  steps  that  were  in  violation  and  anticipatory  breaches  of  its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

   d.  Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

   e.  Engaged  in combinations of part or all of the above.

346.     V10's  acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 78

347.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

348.    As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

### COUNT XXIII
### BREACH OF CONTRACT
(Against V10)

349.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

350.    On or about June 6, 2021, GO Global negotiated the terms of an agreement with V10 through emails and telephone conversations.

351.    In confirmation and acceptance of the parties' agreement, V10, issued or caused to be issued on V10's behalf and benefit the invoices bearing the numbers 06/06/2021-1; 06/06/2021-2;  06/06/2021-3;  06/06/2021-4;  06/06/2021-5;  06/06/2021-6;  06/06/2021-7; 06/06/2021-8; 06/06/2021-9; and 06/06/2021-10.[24]

---

[24] See Paragraph 40, *supra*.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 79

352.     Pursuant to the invoices and parties' agreement, under said invoices, GO Global was required to pay and did pay a total of  $196,560.00, with any remaining balance to be paid upon arrival of the goods at destination.

353.     GO Global did in fact pay all deposits and payments required under the above described Contract.

354.     V10 was obligated to negotiate with GO Global in good faith and was obligated under the terms of the Contract described in this Count to deliver to the destination indicated at the time promised the goods set forth in the Contract.

355.     In the Contract described in this Count, V10 assumed the obligations referenced in Paragraphs 1 through 60 including but not limited to ultimately delivering containers of frozen meat products to GO Global at designated ports in China.

356.     V10 failed and refused to honor its obligations to GO Global under the Contract identified in this Count.

357.     GO Global fully performed all obligations and condition precedents to be performed by GO Global under the Contract identified in this Count.

358.     Subsequent to the formation of the Contract identified in this Count, while GO Global performed all conditions and obligations required of it prior to delivery under said Contract, V10:

           a.  Refused to perform its obligations under the Contract;

           b.  Unilaterally, and without agreement of GO Global or additional consideration on the part of V10, imposed new, unreasonable, and improper conditions upon GO Global and refused to perform its obligations under the Contract unless those new conditions were met;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 80

    c. Undertook steps that were in violation and anticipatory breaches of its obligations under the Contract, such as reselling the products ordered by GO Global to competitors of GO Global or to other third parties;

    d. Cancelled or refused to honor the Contractsand refused to refund payments that GO Global had made therefor; or

    e. Engaged in combinations of part or all of the above.

359.    V10's acts were improper and not permitted under the terms of the Contracts or general principles of contract law.

360.    V10 breached the Contract described in this Count by (i) failing to deliver the agreed upon products in the quantities, time and manner required and (ii) failing to refund any monies to GO Global relating to the failure to deliver.

361.    As a direct and proximate result of V10's breaches of the Contracts, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and ( i) reimbursement of customers' and investors' losses.

**WHEREFORE**, GO Global demands judgment against V10 for compensatory and consequential damages, and special damages as set forth above, plus costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

**COUNT XXIV**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES**
**ACT, Section 501.201, *et seq.*, Florida Statutes**
(Against V10, Junior, and Fedele)

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 81

362.   GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

363.   The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Section 501.201, *et seq.,* Florida Statutes, makes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, unlawful in the conduct of any trade or commerce. *See* Sec. 501.204, Fla. Stat.

364.   Section 501.202(2) of FDUTPA establishes among the purposes and objectives of FDUTPA: "To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."

365.   At all relevant times, GO Global and the V10 Defendants were engaged in trade or commerce as defined in Section 501.203(8), Florida Statutes.

366.   At all relevant times, GO Global was a consumer as defined by Section 501.203(7), Florida Statutes.

367.   The V10 Defendants acted unfairly and deceptively toward GO Global and violated FDUTPA as set forth above and, *inter alia*, in the following ways:

a.   Perpetuating a scheme, as described in detail hereinabove, in which the V10 Defendants connived to induce GO Global to order products through false representations and false assurances;

b.   Inducing GO Global, based on false pretenses, to pay tens of millions of dollars for products the V10 Defendants had no intention or ability to deliver;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 82

c.   Creating a Ponzi scheme, by which the V10 Defendants constantly required GO Global to make additional payments for new shipments in order to maintain the façade of its false narrative of shipments that V10 was already obligated to deliver;

d.   Using the payments that GO Global made for the V10 Defendants' own gain and improper purposes, rather than for the purposes for which they had been requested by V10 and for which GO Global had made the payments;

e.   Gaining control of GO Global's business and funding through artifice, scheme, and contrivance;

f.   Acting with criminal intent and purpose, to the severe detriment of GO Global;

g.   Causing GO Global to incur substantial and unnecessary harm and expense; and

h.   Engaging in the other acts and misrepresentations described hereinabove.

368.   The foregoing unfair acts and conduct of the V10 Defendants and the consequences of those acts and conduct have a severe anticompetitive effect and consequently constitute consumer harm within the meaning and requirements of FDUTPA.

369.   The V10 Defendants' actions were willful, wanton, and malicious.

370.   The foregoing deceptive and unfair acts and omissions violate Section 501.201, *et seq.*, Florida Statutes.

371.   The foregoing deceptive and unfair acts and omissions by the V10 Defendants caused actual damages to GO Global, in an amount to be determined at trial.

372.   As a direct and proximate result of the V10 Defendants' FDUTPA violations, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global's customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity

costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses..

**WHEREFORE**, GO Global demands entry of a judgment (a) declaring that the V10 Defendants violated FDUTPA; (b) awarding actual damages in favor of GO Global and against the V10 Defendants, jointly and severally, for their violations of FDUTPA pursuant to Section 501.211(2), Florida Statutes, including, without limitation, past lost profits for the period from January 2021 to the present, future lost profits thereafter, disgorgement of all earnings of  the V10 Defendants from the misuse of GO Global's funds; and (c) such other relief that this Court deems just and proper.

**COUNT XXV**
**FRAUD IN THE INDUCEMENT**
(Against V10, Junior, and Fedele)

373.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

374.    In their continuing and persistent efforts to steal money from GO Global, the V10 Defendants made repeated false representations of material fact to GO Global including the following:

a.  They represented, in telephone calls, on their website, in written communications, and implicitly in their invoices, shipping documents, and related materials, that V10 had a favorable and longstanding relationship with suppliers;

b.  They represented that they could and would fulfill large container orders that GO Global placed;

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 84

    c.  They represented in telephone calls, on their website, in written communications and implicitly in their invoices, shipping documents, and related materials, that they had substantially and materially more experience and industry knowledge than they actually had;

    d.  They represented in telephone calls and written communications that all orders would be shipped under the terms agreed upon and at the times specified;

    e.  They presented falsified shipping documents to create the impression that products were either scheduled to be shipped or were already in transit;

    f.  They represented that V10 could acquire discounted prices in exchange for full payment;

    g.  They made arrangements with their suppliers that were inconsistent with the orders accepted from GO Global;

    h.  They represented that they had paid the suppliers for GO Global's pending purchases; and

    i.  They represented that they could not ship existing orders unless and until GO Global paid additional deposits for future orders.

375.   The V10 Defendants made these representations in order to obtain additional orders, payments, and commitments from GO Global and to induce GO Global to forbear from taking any action to cancel pending orders and/or recover monies owed for products ordered but not delivered.

376.   The above material representations were false when they were made and the V10 Defendants knew they were false and material when they were made.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 85

377.    The V10 Defendants intended that GO Global would rely on the misrepresentations in GO Global agreeing to continue to order products from V10 and to continue to make payments and/or deposits on orders, and to refrain from taking any steps to cancel pending orders and to take steps to recover payments already made.

378.    GO Global justifiably and reasonably relied to its detriment upon the V10 Defendants' misrepresentations, which were supported through documentation and third parties such as IMC, who also relied upon and accepted the truth of the V10 Defendants' representations, in agreeing to continue placing orders with V10 and making the deposits and payments for products that would never be shipped to GO Global or its customers.

379.    As a direct and proximate result of the fraudulent conduct described above, GO Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h) demurrage charges; and (i) reimbursement of customers' and investors' losses.

380.    The V10 Defendants acted with wanton, willful and malicious disregard for the rights of GO Global, knowing that the ongoing deceptions would adversely affect GO Global's ability to continue to serve its customers or to be accepted as a trustworthy business.

381.    The V10 Defendants knew or should have known that (a) GO Global would suffer serious harm from the fraudulent conduct, and (b) the V10 Defendants' conduct involved a reckless disregard of the likelihood of serious harm to GO Global.

**WHEREFORE**, GO Global demands judgment against V10, Junior, and Fedele, jointly and severally, for compensatory, consequential, special damages, and punitive damages, plus

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 86

costs, pre-judgment and post-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT XXVI
## FRAUD
(Against V10, Junior, and Fedele)

382.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

383.    Once the V10 Defendants had obtained an order from GO Global, continuing to perpetuate their frauds and deceptions was critical to the V10 Defendants being able to maintain the scam in place, to convince GO Global that existing orders were progressing in due course, and to obtain payments of deposits and/or full payments.

384.    Accordingly, the V10 Defendants engaged in the follow fraudulent conduct directed at GO Global.

a.    They represented in telephone calls and written communications, that all orders would be shipped under the terms agreed upon and at the times specified;

b.    They provided false and altered shipping documents, such as those attached hereto as Composite Exhibit "2;"

c.    They represented that they had paid V10's suppliers for GO Global's purchases and that the orders were being shipped;

d.    They represented that V10 could not ship existing orders unless and until GO Global paid deposits for future orders;

e.    They misrepresented the causes of delays and shipping cancellations, falsely advising GO Global that logistical issues arising out of Covid and other problems beyond V10's

control were the reason for these problems, when in fact, the reasons for the problems were the

V10 Defendants' willful failure and refusal to meet the obligations to GO Global;

      f.   They did not order from V10's suppliers the quantities of goods that GO Global

had ordered and collected amounts from GO Global for products that Defendants knew it would

not be ordering or shipping for GO Global;

      g.   They made arrangements with V10's suppliers that were inconsistent with the

orders accepted from GO Global; and

      h.   They engaged in the other fraudulent conduct described hereinabove.

385.   The above material representations were false when they were made and the V10

Defendants knew they were false when they were made.

386.   The V10 Defendants intended that GO Global would rely on the misrepresentations

in GO Global agreeing to make payments and/or deposits on orders, and to refrain from taking any

steps to cancel pending orders and to take steps to recover payments already made.

387.   GO Global justifiably and reasonably relied to its detriment upon the V10

Defendants' misrepresentations, which were supported through documentation and third parties

such as IMC, who also relied upon and accepted the truth of the V10 Defendants' representations,

by continuing to place orders with V10 and making the deposits and payments for products that

would never be shipped to GO Global or its customers.

388.   As a direct and proximate result of the fraudulent conduct described above, GO

Global has suffered damages as set forth in Exhibit 1 and special damages including (a) accrued

charges paid to shipping companies; (b) indemnification of losses incurred by GO Global

customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 88

costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill

and reputation; (h) demurrage charges; and (i) reimbursement of customers' and investors' losses.

389.    The V10 Defendants acted with wanton, willful and malicious disregard for the

rights of GO Global, knowing that the ongoing deceptions would adversely affect GO Global's

ability to continue to serve its customers or to be accepted as a trustworthy business.

390.    The V10 Defendants knew or should have known that (a) GO Global would suffer

serious harm from the fraudulent conduct, and (b) the V10 Defendants' conduct involved a reckless

disregard of the likelihood of serious harm to GO Global.

**WHEREFORE**, GO Global demands judgment against V10, Junior, and Fedele, jointly

and severally, for compensatory, consequential, special damages, and punitive damages, plus

costs, pre-judgment and post-judgment interest, and for such further relief as this Court deems just

and proper.

## COUNT XXVII
## CIVIL LIABILITY UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C SECTIONS 1961, *et seq*. ("RICO")
(Against V10, Junior, and Fedele)

391.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this

Complaint as if fully restated herein.

392.    GO Global alleges that the V10 Defendants' conduct, and the conduct of each of

them, constitutes racketeering as set forth in 18 U.S.C. Section 1964(c). Specifically, Congress has

defined "racketeering" to include, among other things, any act which is indictable under Section

1343 (relating to wire fraud or committing fraud by means of electronic transmissions over wire).

The V10 Defendants here engaged in multiple instances of wire fraud, including, but not limited

to emailing falsified shipping documentation to GO Global; emailing and texting GO Global with

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 89

false representations as to the costs, shipping requirements, payment obligations, and status of purchases and shipments; emailing and texting demands and messages to secure from GO Global payments for cargo not acquired by V10 and never to be acquired by V10; emailing and texting demands and  messages to GO Global to obtain payment for cargo that the V10 Defendants had resold to other customers; and demanding deposit payments from GO Global as an unlawful condition and an extortionate demand as a condition to sending shipments to GO Global that V10 was lawfully required to ship with no further legal obligation on GO Global's part. As detailed below, GO Global alleges multiple acts comprising the V10 Defendants' racketeering conduct and giving rise to this action for federal RICO violations. In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. The V10 Defendants are liable to GO Global under each of these three sections of the statute.

393.    18 U.S.C. Section 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …."

394.    18 U.S.C. Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . "

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 90

395.    Each of the V10 Defendants, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. Section 1961(3) because each V10 Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

396.    The V10 Defendants' activities include at least two acts of racketeering activity since January 2021. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

397.    Among the wire frauds that occurred are the following:

a.  On or about July 27, 2021, V10, through Junior, Fedele, and their representative Carol Camargo, sent to GO Global through an internet texting application the documents attached as Composite Exhibit "3."  V10, through Junior, Fedele, and their representative Carol Camargo, had repeatedly been making excuses for the fact that product had not been released notwithstanding GO Global's payments therefore. They had falsely represented, among other things, that the ongoing delays were the result of Covid 19 as suppliers and shipping lines were facing staff shortages.

b. In a letter dated August 17, 2021, which Junior sent to GO Global through the internet via a text application, attached hereto as Exhibit "4," Junior and V10 falsely represented:

(i) That V10 had fully paid all amounts due to its supplier for specified cargo;

(ii) That delays in the releases of containers had been caused by a force majeure situation (Covid 19) causing a shortage of staff with the suppliers and shipping lines;

(iii) That Copacol, one of the major suppliers, had not been loading sufficient quantities cargo and had fallen behind in orders, and finally in July were beginning to do so more aggressively

(iv) That the releases were subject to the "ocean line final release."

c. In an email attached hereto as Exhibit "5," sent over wire by V10 from Florida, V10 misrepresents that it had placed orders that it had not placed, falsely blames the supplier for delays in shipment, and urges additional payments from GO Global.

398.    There were many other such acts constituting wire fraud that the V10 Defendants engaged in continuously and as an ongoing practice and scheme between January and August 2021.

399.    At all times relevant hereto, beginning in or around January 2021 and continuing through the termination of the relationship between V10 and GO Global, each of the V10 Defendants conducted and participated in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. Section 1962(c).

400.    In or around January 2021, the V10 Defendants formed an association-in-fact Enterprise, as defined in 18 U.S.C. Section 1961(4), described herein as the "V10 Enterprise," within the meaning of 18 U.S.C. § 1961(4).

401.    The V10 Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding GO Global by creating and conducting a scheme to fraudulently act as an international commodities distributor.

402.    The V10 Enterprise was, at all times material hereto, an ongoing organization that functioned as a continuing unit and is still extant, though its current activities are unknown to GO Global. The V10 Enterprise was created and used as a tool to effectuate the V10 Defendants' pattern of racketeering activity.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 92

403.     All of the V10 Defendants agreed to and did conduct and participate in the conduct of the V10 Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. Section 1343, for the unlawful purpose of intentionally defrauding Plaintiff.

404.     The wire fraud committed by the V10 Defendants is based on a scheme developed and carried out by the V10 Enterprise wherein Junior and Fedele electronically created and distributed falsified shipping records, (using interstate wires); sent messages with false pricing (using interstate wires); demanded payment for future orders as a condition to ship orders already paid for (using interstate wires); all with the illegal purpose of stealing funds from GO Global, providing nothing in return.

405.     GO Global was deceived by these fraudulent communications, which continued at least from January through August, 2021.

406.     The V10 Defendants, and each one of them, had a duty to disclose to GO Global the true and accurate status of each order and, if V10 was unable or unwilling to complete the shipments under the terms promised, to advise GO Global accordingly, to refrain from demanding payments, to return payments acquired under false pretenses, and to cease operating under false pretenses.

407.     The V10 Defendants' acts and omissions, as described in Paragraphs 103 through 116, were intentional and with full knowledge of all relevant facts by each and all of the V10 Defendants.

408.     The V10 Defendants' acts and omissions, as described in Paragraphs 103 through 116, were fraudulent.

409.    The V10 Defendants' acts and omissions, as described in Paragraphs 103 through 116, were attempts to unlawfully claim and collect as a debt, moneys that were not properly due or owing to V10.

410.    The V10 Defendants utilized the V10 Enterprise to receive income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

411.    The V10 Defendants utilized the V10 Enterprise to engage in a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

412.    The V10 Defendants utilized the V10 Enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

413.    The V10 Defendants, by their acts and omissions, conspired to violate the provisions of subsections (a), (b), or (c) of 18 U.S.C. Section 1962.

414.    The V10 Defendants used the Internet and other electronic facilities to carry out their scheme, to conceal their ongoing fraudulent activities, and to pursue the activities of the V10 Enterprise.

415.    At all times discussed herein, the V10 Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 94

could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further the V10 Defendants' scheme.

416.   The V10 Enterprise engaged in and affected interstate commerce by way of said wire fraud.

417.   The wire transmissions described herein were made in furtherance of the V10 Defendants' scheme and common course of conduct.

418.   To achieve their common goals, the V10 Defendants knowingly and willfully concealed from the public, V10's vendors, V10's agents, governmental authorities, and GO Global the unlawfulness of the V10 Defendants' conduct, which was committed at the instruction of, and through the directions of the Individual Defendants.

419.   As a direct and proximate consequence of the conduct of the V10 Defendants and each of them as alleged herein, GO Global has been injured in its business and property, causing GO Global to suffer monetary damages in an amount not less than $40 million, said damages to be proven at the time of trial. GO Global has suffered the damages as set forth in Exhibit 1 and special damages including (a) accrued charges paid to shipping companies; (b) indemnification of losses incurred by GO Global customers; (c) charges from suppliers as conditions for releasing product; (d) lost opportunity costs; (e) lost profits; (f) the inability to engage in future business endeavors; (g) loss of goodwill and reputation; (h)  demurrage charges; and ( i) reimbursement of customers' and investors' losses.

420.   Because of the V10 Defendants' violations of 18 U.S.C. Section 1962(c), the V10 Defendants are liable to GO Global for three times the damages sustained, plus the cost of this suit, including reasonable attorneys' fees, as provided under 18 U.S.C. Section 1964(c).

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 95

**WHEREFORE**, GO Global demands judgment against V10, Junior and Fedele, jointly and severally, for compensatory, consequential, and special damages, treble damages pursuant to 18 U.S.C. Section 1964(c), plus costs, pre-judgment and post-judgment interest, and for such further relief as this Court deems just and proper.

**COUNT XXVIII**
**CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT**
**Sections 772.101 *et seq.*, Florida Statutes**
(Against V10, Junior and Fedele)

421.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

422.    Chapter 772, Florida Statutes is Florida's Civil Remedies for Criminal Practices Act (the Act").

423.    Section 772.103 of the Act provides:

Prohibited activities.—It is unlawful for any person:

(1)    Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2)    Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3)    Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(4)    To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

424.    Section 772.104 of the Act provides:

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 96

Any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

425.     Section 772.102 of the Act defines "criminal activity," in pertinent part, as follows:

Criminal activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:

(a)   Any crime that is chargeable by indictment or information under the following provisions:

…

26.   Section 836.05, relating to extortion.

426.     Section 836.05, Florida Statutes, provides:

**Whoever, either verbally or by a written or printed communication**, maliciously threatens to accuse another of any crime or offense, or **by such communication maliciously threatens an injury to the** person, **property or reputation of another, or maliciously threatens to expose another to disgrace**, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, **with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a felony of the second degree**, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(Emphases added).

427.     As a consequence of the various acts, wrongdoing, frauds, and lies, as summarized in Paragraph 43, above, GO Global was facing existential problems by the summer of 2021. GO Global's customers were demanding the products for which they had paid in part or full. GO Global had paid millions of dollars to V10 in compliance with its obligations under each of the transactions it had with V10. But V10 was not completing any of the shipments.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 97

428.     The V10 Defendants' verbal, written, and printed communications constitute malicious threats of an injury to the property and reputation of GO Global and threats to expose GO Global to disgrace, with the intent thereby of the V10 Defendants to wrongfully obtain GO Global's money and to gain pecuniary advantage over GO Global, with the intent to compel GO Global pay moneys not owed against its will.

429.     The V10 Defendants have thus violated Section 836.05, Florida Statutes, and therefore have engaged in a pattern of criminal activity, as that term is defined in Section 772. 102, Florida Statutes.

430.     In the course of this pattern of criminal activity, the V10 Defendants have acted in violation of Section 772.103, Florida Statutes.

431.     As a direct and proximate result of the V10 Defendants' conduct in this pattern of criminal activity, GO Global has been damaged.

432.     GO Global is entitled to recover and hereby demands recovery from the V10 Defendants threefold the damages that GO Global has sustained from the V10 Defendants' criminal activities.

433.     GO Global's damages include, but are not limited to, the additional payments it paid to V10 under the threats made, all deposits and payments made for shipments not received, damages to GO Global's reputation and loss of goodwill, costs of this action, and all such other damages as it may prove to have sustained and that are compensable under Chapter 772, Florida Statutes.

**WHEREFORE**, GO Global demands judgment against V10, Junior and Fedele, jointly and severally, for compensatory, consequential, special damages, and punitive damages, plus

costs, pre-judgment and post-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT XXIX
## BUSINESS DEFAMATION
### (Against V10, Junior and Fedele)

434.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

435.     Between August 2020 and the present, the V10 Defendants have engaged in a course of conduct designed to damage GO Global's reputation in the industry.

436.     The V10 Defendants have communicated with suppliers, governments agencies, GO Global's customers, other potential customers, vendors, agents and brokers, and other persons integral to GO Global's industry and have disparaged GO Global with false and defamatory statements, blaming GO Global for the V10 Defendants' shipping failures and breaches.

437.     Specifically:

a.   Between May 2021 and the present, the V10 Defendants have falsely represented to suppliers, vendors and other persons in GO Global's industry that GO Global does not pay its accounts on time or in the correct amounts;

b.   Between May 2021 and the present, the V10 Defendants have falsely represented to suppliers, vendors, and to the public at large that GO Global has failed to pay for orders made and shipped; and

c.   Between May 2021 and the present, the V10 Defendants have falsely represented to suppliers, vendors, and to the public at large, that GO Global and one or more of its principals have been engaging in or attempting to engage in frauds and illegal acts to divest its customers of money for wrongful pecuniary gain.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 99

438.    As a direct and proximate result of the false and defamatory statements described above, GO Global has suffered damages and special damages including (a) lost opportunity costs; (b) lost profits; (c) the inability to engage in future business endeavors; (d) loss of goodwill and reputation; (e) demurrage charges; and (f) reimbursement of customers' and investors' losses.

439.    The above statements published by the Individual Defendants, individually and on behalf of Defendant,  V10, expressly referred to GO Global and were so understood by GO Global's vendors, customers, and others in GO Global's industry.

440.    The above-described statements concerning GO Global were false, reckless, willful, malicious and slanderous.

441.    The Individual Defendants, individually and on behalf of Defendant,  V10, made the defamatory statements with the express intent of discrediting GO Global and injuring its business reputation, and with knowledge that the statements were false or in reckless disregard of whether or not they were false.

442.    The statements constitute libel "per se" in that they expressly or impliedly impute to GO Global the commission of crimes, a lack of fitness or honesty in the performance of its business activities , and also subject GO Global and its principals to distrust, ridicule, contempt and disgrace.

443.    The Individual Defendants' actions, individually and on behalf of Defendant,  V10, in knowingly publishing the false statements were intentional and done with express and implied malice. The Individual Defendants knew or should have known that such statements were false when they made them, or failed to exercise reasonable care in verifying the truth or falsity of such statements before transmitting these statements, or recklessly disregarded the truth or falsity of the statements. Nonetheless, the Individual Defendants, individually and on behalf of Defendant,  V10,

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 100

made such false statements recklessly and in conscious disregard of the truth. Further, the Individual Defendants, individually and on behalf of Defendant,  V10, committed such acts maliciously and fraudulently, with ill will and an evil intent to defame and injure GO Global.

444.    The V10 Defendants acted with wanton, willful and malicious disregard for the rights of GO Global, knowing that their false and defamatory statements would adversely affect GO Global's ability to continue to serve its customers or to be accepted as a trustworthy business.

445.    The V10 Defendants knew or should have known that (a) GO Global would suffer serious harm from their defamatory statements, and (b) the V10 Defendants' conduct involved a reckless disregard of the likelihood of serious harm to GO Global.

**WHEREFORE**, GO Global demands judgment against DefendantsV10, Junior and Fedele, jointly and severally, for compensatory, consequential, special damages, and punitive damages, plus costs, pre-judgment and post-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT XXX
## REMEDIES UNDER THE UNITED NATIONS CONVENTION
## ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS
(Against V10)

446.    GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

447.    This is an action for remedies afforded to a buyer under the United Nations Convention on Contracts for the International Sale of Goods ("U.N. Convention").

448.    The U. N. Convention is a treaty adopted by the United States on December 11, 1986, with an effective date of January 1, 1988. The Convention is found as Appendix to Title 15 of the United States Code.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 101

449.     Hong Kong and the United States, the domiciles of GO Global and V10, respectively, are both signatories to the U.N. Convention.

450.     As set forth in the U.N. Convention, V10 assumed the obligations which reasonably and objectively emanated from their express Contracts with GO Global and from the incidental effects of their Contracts.

451.     Under the U. N. Convention, the Contracts have been avoided and cannot be practically completed at this time in any event.

452.     V10, as seller under the Contracts with GO Global, has breached the Contracts GO Global and is in default thereunder.

453.     GO Global has sustained damages as a direct and proximate result of V10's non-performances and breaches.

454.     Under the U.N. Convention, GO Global is entitled to damages in a sum equal to the buyer's loss, including loss of profits that the buyer suffered as a consequence of the breach.

455.     Under the U.N. Convention, GO Global is entitled to recover its attorneys' fees in pursuing remedies against V10 for its breaches.

**WHEREFORE**, GO Global demands judgment against V10 for damages as allowed under the U.N. Convention, including all payments and deposits made, lost profits, attorneys' fees, costs, pre-judgment interest and post-judgment interest, and such further relief as this Court deems just and proper.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 102

## COUNT XXXI
## INTERFERENCE WITH BUSINESS RELATIONSHIPS
(Against V10, Junior and Fedele)

456.   GO Global realleges and incorporates by reference Paragraphs 1 through 60 and

Paragraphs 149 through 154 of this Complaint as if fully restated herein.

457.   GO Global has, and at all times material hereto had, legitimate and protectable

interests in its business relationships with its customers.

458.   Among others, GO Global had ongoing and commercial valuable business

relationships with the following customers:

      a.   Guangzhou De YaoHang

      b.   Minka Trading Limited

      c.   Qingdao New Bizoe

      d.   Guangzhou Xingchang

      e.   Shanghai Dayun

      f.   Guangzhou Tianji Foods

      g.   Jia Deye

      h.   Guangzhou Henfeng Yi Co. Ltd.

      i.   ShangHai QiLong International Trading company,Ltd

      j.   Nizhao sheng

      k.   Shandong Weijia Foods Co. Ltd.

      l.   Guangzhou Xianrensen

      m.   Shenzhen Bomeishen Co. Ltd.

      n.   Shenzhen Optimize Group

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 103

459.    At all relevant times, the V10 Defendants were aware that GO Global had ongoing legitimate and protectable interests in its business relationships with the above identified customers and others.

460.    At all relevant times, the V10 Defendants were aware that GO Global was placing orders with V10 on behalf of the above identified customers and that GO Global was advancing money to V10 that these customers had paid to GO Global for the purpose of covering the costs of deposits and relating shipping costs.

461.    At all relevant times, the V10 Defendants were aware, and GO Global constantly reminded the V10 Defendants, that these customers were relying upon the timely shipment of the frozen meat products ordered. In addition, GO Global constantly made the V10 Defendants aware that GO Global's business with these customers depended on the competent fulfillment of the orders.

462.    At all relevant times, the V10 Defendants knew, or should have known, that their retention of the amounts that GO Global paid and their ongoing misrepresentations as to the status of the shipments and the orders would detriment GO Global and would impair or would destroy GO Global's relationships with the above identified customers.

463.    As a direct consequence of the conduct described herein, the V10 Defendants, without a legal right to do so, have tortiously, intentionally and maliciously interfered with GO Global's legitimate and protectable interests in its business relationships with its customers and others.

464.    As a direct and proximate result of the V10 Defendants' tortious interference with GO Global's legitimate and protectable interests in its business relationships with its customers and others, GO Global has suffered damages, in an amount to be proven at trial.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 104

**WHEREFORE**, GO Global demands judgment against Defendants, jointly and severally, for compensatory, consequential, special damages, and punitive damages, plus costs, pre-judgment and post-judgment interest, and for such further relief as this Court deems just and proper.

**COUNT XXXII**
**FRAUDULENT CONVEYANCE**
(Against V10 Defendants and John Does 1, 2, and 3)

465.     GO Global realleges and incorporates by reference Paragraphs 1 through 60 of this Complaint as if fully restated herein.

466.     GO Global advanced funds to V10 for the future payment on goods to be provided and it is therefore a creditor for purposes of the Florida Uniform Fraudulent Transfer Act, Sections, 726.102(4) and (5), Florida Statutes.

467.     The V10 Defendants failed and refused to return said funds to GO Global upon cancellation of the Contracts between V10 and GO Global. Instead, the V10 Defendants transferred the funds to John Does 1, 2 and 3 for no consideration and for the purpose of concealing said money and denying GO Global its rightful property.

468.     Upon the transfer of the funds, V10 lacked sufficient funds to continue its operations and to pay GO Global the amounts due to it.

469.     The V10 Defendants transferred the funds to John Does 1, 2 and 3 with the actual intent to hinder, delay, or defraud its creditors, including GO Global.

470.     The transfer of the funds to John Does 1, 2, and 3 was for the benefit of insiders, including Junior and Fedele, who retained control and possession of the property after it was transferred.

471.     John Does 1, 2, and 3, as transferees, did not take the funds in good faith and did not exchange consideration of a reasonably equivalent value.

Complaint
*GO Global Trading & Consulting, Ltd. v. V10 Global Logistics & Trading Corp.*
Page 105

472.     The V10 Defendants' transfer of the funds constituted a fraudulent transfer in violation of Sections 726.105(1)(a), 726.105(1)(B), 726.106(1), Florida Statutes.

473.     GO Global was harmed by the fraudulent transfer of the funds, and it is entitled to the relief provided by Section 726.108 Florida Statutes.

**WHEREFORE**, GO Global requests this Court enter a judgment in its favor and against all Defendants for the remedies set forth in Section 726.108, Florida Statutes, for the full amount due and owing it for all payments and deposits not returned by V10, pre-judgment interest, costs, along with any such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

GO Global requests a trial by jury on all issues so triable.

Dated this 25th day of May, 2022.